THE WANDERER.[1]

*(Circuit Court, E. D. Louisiana.  April 11, 1884.*

1. MARINE TORT.
    In cases of marine tort courts of the admiralty are not bound by the common and civil law rules governing cases of contributory negligence, but will, in the exercise of a sound discretion, give or withhold damages according to principles of equity and justice, considering all the circumstances of the case.
    *The Explorer, ante,* 135, followed.

2. SAME—LIABILITY OF SHIP—CONTRIBUTORY NEGLIGENCE.
    Where the libelant was injured severely through the negligence of the ship, his own negligence contributing thereto, so much so that without his contributory negligence he would not have been injured at all, *held* that while equity will not justify his being rewarded for his negligence at the expense of the ship,

1 Reported by Joseph P Hornor, Esq., of the New Orleans bar.

equity and good conscience will permit that the ship shall be held responsible for its negligence resulting in injury to the extent of paying for the direct care, attention, medical services, and expenses required for the injured party, not as compensation for the injury, but as required by decency and humanity from a party without whose fault there would have been no injury.

3. COSTS.

Under the facts of this case, and the libellant undoubtedly believing that he was entitled to compensation, and prosecuting in good faith, costs were taxed against the claimant.

Admiralty appeal.

*Geo. L. Bright*, for libelant. ·

*J. Ward Gurley, Jr.*, for claimant.

PARDEE, J. The libelant complains that he was a seaman on the Wanderer; that there was on the steamer a ladder leading from the upper deck to the steerage, and to the lower deck; that this ladder was always fastened to the lower deck so as to prevent it from slipping; that the ladder and the cleats that fastened it were removed, and that the ladder was put back without cleats or fastenings of any kind; that when he was going down this ladder the ladder slipped, he fell, suffered great pain and injury by the fall, injured his groin and testicles, so as to unfit him for work for at least six months. He charges that his injuries resulted from the carelessness of the master and owner of the vessel in not properly securing the ladder. The answer denies that libelant fell or was injured as alleged, and alleges that the ladder was at all times properly secured, and had never been removed; that the libelant had no right to go down the ladder, and if he did go down the same it was not in the line of his duty; and that the libelant's injuries, if he was injured, were not caused by the neglect or carelessness of the respondent.

From the evidence it seems clear that the ladder in question was not properly secured on the day libelant alleges he received injury by its falling. It had been secured prior to that time, but in repairing some pump underneath, the ladder was removed, and by the time it was replaced the proper cleats at the bottom had disappeared. The evidence on this point is uncontradicted, except by the master of the ship, and his testimony in relation to the cleat is inferential and negative in character. That the ladder slipped and fell when libelant was going down it, and that he was injured thereby, depends entirely upon the evidence of libelant himself. No person saw him go down or come up, saw the ladder fall, or saw it replaced. At the time he neither called for assistance nor reported to any one that he had fallen. That night he told a comrade he had fallen with the ladder, and complained of severe and painful injury. It seems that he continued on duty for several days, when the mate, seeing him limping, inquired what was the matter, and was told by libelant that he had fallen down with the steps in the steerage, and then the mate made entry of the complaint in the log. It seems that the master was first informed, and by libelant, of the alleged hurt, when the ship

arrived at Belize, but he swears he had no idea that libelant had fallen down a ladder until the ship returned to New Orleans, when his owners told him that such a claim was made.

The character and extent of the alleged injury depends also to a great degree upon the unsupported evidence of libelant. One of his comrades, three or four days after the alleged injury, saw that he had a large and painful swelling and bandaged it up.

The surgeon in charge of the hospital at Belize, where libelant went for six days while the Wanderer remained in port, testified that he treated libelant for acute orchitis; that he could not tell what caused it; that he was discharged cured; and that he did not think any permanent injury would result from his affection, and that in his opinion he would have been able to resume work in a few days after being discharged. "Orchitis is inflammation of the secreting structure of the testicle. It occurs sometimes spontaneously in an acute way. It is the malady of the testicle seen in connection with mumps, and is most apt to result from local injury. The pain in orchitis is intense and often of a peculiar sickening character. A chill may precede its outbreak. The natural terminations are in resolution, atrophy, or abscess. The first two occur in the spontaneous variety of orchitis and in that seen with mumps. Abscess is not often seen, except after local violence." See Wood Household Practice, vol. 2, p. 528. The surgeon's testimony and certificates in the record show recovery, but say nothing of atrophy or abscess in the case of libelant.

The libelant swears to a swelling of the testicle, to continuous pain, and to inability to work as a sailor; but that he had declined to go to the hospital here, was being treated by no physician, but was being treated by a druggist internally and externally, and that he was laboring a little at stevedoring, hooking on the tubs and driving the steam winch. According to the medical authority quoted *supra*, the natural termination of the libelant's complaint should be recovery, a shrinking or wasting away of the organ, or an abscess. He repudiates a recovery, but he is silent as to atrophy or abscess, neither of which, had it happened, could have escaped his attention.

As to whether the libelant had any right to go down the ladder into the steerage the evidence is conflicting, the preponderance being against the right. He was not sent there on any duty; the ship's stores were there, and the regulations of the ship prohibited the crew from going there unless sent on duty. The libelant contends, and is supported by three several witnesses, that the crew were compelled to go there for fit drinking water, the supply from the deck pump, which had recently been repaired, being oily and unfit, and that the habit and necessity of the crew to go there for water was well-known to and not forbidden by the officers. This is denied by the captain, first mate, second mate, and steward. It does not seem probable that enough oil would be likely to be used about the pump, which was what is called a pitcher pump, to affect the water for any time, and that

fact not be generally known on the ship. There is no doubt under the evidence that water from the pump on deck was continuously used for drinking and cooking on that voyage. On the whole showing it seems that the most favorable case that can be made for the libelant is that he was injured severely through the negligence of the ship, his own negligence contributing thereto, so much so that without his contributory negligence he would not have been injured at all. As this court has just held, in the case of *The Explorer, ante,* 135, in cases of marine tort, courts of the admiralty are not bound by the common and civil-law rules governing cases of contributory negligence, but will, in the exercise of a sound discretion, give or withhold damages according to principles of equity and justice considering all the circumstances of the case.

The libelant's case under the proof is not a strong one, either as to his actually having been injured, or as to the extent of his injury. The fault of the ship was accidental. It is not equitable to reward a person who has helped to injure himself. The libelant is a laboring man, without means. He was a sailor aboard a ship at the time he received injury. Considering the manner in which he received injury, his service at the time and his estate, while equity will not justify his being rewarded for his negligence at the expense of the ship, equity and good conscience will permit that the ship shall be held responsible for its negligence resulting in injury to the extent of paying for the direct care, attention, medical services, and expenses required for the injured party; this not as a compensation for the injury, but as required by decency and humanity from a party without whose fault there would have been no injury. It seems, however, in this case that libelant was sent to the hospital in Belize, where he remained until pronounced cured; that he returned to the ship, and thereon to this port, was required to do no work, and received his pay for the entire time of the trip. That on his arrival here he was offered by the ship further hospital treatment, which he declined. The treatment he received was without expense to him, and he proves in this case no expenditures for care, attention, medical services or medicines. If any such expenses had been proved they would be allowed.

There remains to determine responsibility for the costs in the case. These are also within the jurisdiction of the court. The libelant undoubtedly believed and will probably always believe that he was entitled to compensation from the ship for his injury, and to that extent the prosecution has been in good faith. It is known to the court that he prosecuted his case in the district court *in forma pauperis,* and the record shows that he comes to this court on the bond of his proctor, who, undoubtedly, believed that his client's case had merit. Under the facts found in the case as to the ship's negligence and these circumstances as to costs, it would seem fair and just that the costs

should be taxed to the claimant. The decree of the district court dismissed the libel, but decreed no costs.

The decree of this court will be entered dismissing the libel, but directing the claimant to pay costs.