### The Edith Godden. •

(*District Court, S. D. New York.* January 30, 1885.)

PERSONAL INJURIES — LIABILITY OF SHIP-OWNER TO SAILOR FOR INJURIES RECEIVED IN CONSEQUENCE OF INADEQUATE MACHINERY—MODERN APPLIANCES —MARITIME LAW AS DISTINGUISHED FROM THE MUNICIPAL.

Ship-owners, in furnishing modern appliances for the convenience of the ship, such as a steam-winch, in connection with a derrick, for loading and unloading, are held to the strictest rule of diligence and care as to the sufficiency of such appliances. If inadequate for the purpose designed, or to which they are put by authority of the owners, the latter will be held liable to a seaman injured by reason of such inadequacy. The ancient maritime rule, limiting a seaman's compensation to wages and expenses of cure, should not be extended to these modern conditions and appliances, not strictly belonging to the navigation of the ship, for which these limitations were never designed; but, as regards accidents from such causes, the analogies of the municipal law should be followed. On the steamer E. G. a derrick was used, in connection with a steam-winch, for the purpose of loading and unloading. At Port Maria, Jamaica, a fruit boat, taken aboard the day previous, being an old long-boat, and weighing about 1½ tons, was being lowered away by this means, but as it was swung over the rail, the hook which held the derrick in place broke, and the boom

of the derrick fell upon the deck. In falling, it struck the libelant upon the shoulder, causing severe injuries. The same appliance had been used the day before, in hoisting the boat aboard, with safety, but in a quiet harbor. Port Maria is an open roadstead, and on this occasion there was considerable rolling and lurching of the ship. There was no latent defect in the hook that broke. *Held*, that the owner was bound to furnish appliances adequate for the place and occasion where used, and these being, in fact, inadequate, and never tested for sufficiency under the circumstances of a rolling sea, held negligence in the owners, and that the vessel was liable for the damages; and $1,500 were awarded to the libelant.

In Admiralty. Action for personal injuries.

*H. J. Schenck*, for libelant.

*H. Putnam*, for claimant.

Brown, J. On the nineteenth of January, 1883, the libelant, being a seaman on the steam-ship Edith Godden, was ordered, with others, to help hoist and lower away from the steam-ship, while lying at Port Maria, Jamaica, a fruit boat, formerly a long-boat, designed to be used for the lading of cargo there. A derrick was made use of in connection with a steam-winch, and the boom of the derrick was held in place by means of a block, through which ran double ropes to the foretop-mast, and the block was attached by an iron hook running inside of an iron collar which surrounded the derrick boom. After the boat had been raised and got over the ship's rail, the hook that held the derrick in place broke, and the boom fell down upon the deck, across the hatch and the rail. In falling it struck the libelant upon the shoulder, causing severe injuries, for which this libel was filed.

The evidence varies considerably, both as to the weight of the fruit boat, and as to the weights that the derrick was designed to sustain. There was a brake, designed to be applied by the foot, attached to the winch; but it was out of order. The fruit boat had been taken on board the day before by the use of the same derrick, winch, and tackle, in a quiet harbor. Port Maria is an open, unsheltered roadstead; and when the boat was lowered away, there was considerable rolling and lurching of the ship. Considerable evidence for the claimants was offered to the effect that the brake, if in order, would not be proper to be used in lowering weights so heavy as this boat, which weighed somewhere from one to two tons; that the only proper mode, and the mode ordinarily in use, was by reversing the steam-winch, and managing the steam-valve by hand. In behalf of the libelants, the evidence of some experts was to the effect that the reversing of the steam-winch, and managing it by hand, was a somewhat delicate operation, that required care to prevent sudden jerks; and that special difficulty was likely to arise in this way where there was any rolling or lurching of the ship. An examination of the hook showed no defects in the iron at the place of breakage, and no apparent insufficiency. In this respect the case differs from that of *The Nederland*, 7 Fed. Rep. 926. The only cause for breakage that could be assigned was either too great a weight, or some sudden strain. The weight of proof indicates

that the hook bróke at the time when the order was given by the mate to reverse the winch, when there was a lurch of the vessel.

I cannot doubt that the real cause of this accident was in the over-weight, or strain incident to the use of this derrick and winch, in lowering so heavy a weight in a rolling sea. It is not a case of any latent defect; for the testimony of the experts negatives any such cause. Nor is there proof of any definite act of negligence on the part of the men that were using or handling the winch or the derrick. The machinery must therefore be deemed itself insufficient for the use to which it was applied, under the particular circumstances where it was thus used. Upon the evidence it must be inferred, moreover, that the owners were responsible for the use of this machinery under the circumstances that caused it to break and injure the libelant. The fruit boat belonged to the owners of the ship. It had been taken on board at another port in Jamaica, for the purpose of being used at Port Maria, and this was clearly done under the direction of the owners or their agents, and for their benefit. In providing that this boat should be taken on board the steam-ship, and then launched at Port Maria under the disadvantages of a rough sea, to which the latter port was exposed, I think the owners must be held answerable for any insufficiency of the derrick for the use to which it was there necessarily subjected under the more hazardous circumstances at Port Maria. Their legal duty, by the municipal law, was to exercise due care in providing machinery adequate and proper for the use to which it was to be applied, and to maintain it in like condition. *Kain* v. *Smith*, 80 N. Y. 458, 467; *Devlin* v. *Smith*, 89 N. Y. 470; *The Rheola*, 19 FED. REP. 926.

This derrick and winch do not appear to have been designed for use under circumstances of sudden strain and jerks, or to have been tested in such circumstances. In providing that the fruit boat should be launched at Port Maria by means of this derrick and winch, the owners, or their agents who directed it, were answerable for their insufficiency in the absence of any reasonable tests of ability to undergo such strains. The libelant had no means of knowing their strength, and he had no option but to obey orders. A seaman on board ship has not the privilege of using his own judgment, or of quitting the ship's service if he apprehends danger, like an ordinary workman on shore. If owners cannot be held as insurers of the appliances furnished to the ship for the safety of seamen, they ought, at least, to be held to the strictest rule of diligence and care. As there was no negligent act shown on the part of those using the derrick that caused it to break, and no latent defects, I must ascribe the breakage, as I have said, to the insufficiency of the derrick itself for the strain to which it was subjected when used in a rolling sea in connection with a steam-winch, and hold the owners responsible therefor, in the absence of any previous tests of fitness to undergo such sudden strains as it was liable to under such circumstances.

For the claimants it is urged that by the maritime law the liability of the ship, in case of injury to seamen, extends only to proper care and nursing, and the expenses of cure, so far as cure is possible; and this court has so held in regard to accidents arising in the ordinary course of navigation. *The City of Alexandria*, 17 Fed. Rep. 390. In that case, however, the proper equipment and outfit of the ship were assumed. Pages 393, 396. There is no question that in modern maritime law the owners are responsible for due care and diligence in the proper equipment of the vessel for the contingencies of the voyage. *Halverson* v. *Nisen*, 3 Sawy. 562. See *The Explorer*, 20 Fed. Rep. 135; *The Wanderer*, Id. 140. In the use of modern appliances, such as a steam-winch in connection with a derrick, as in this case, not for the prosecution of her ordinary navigation, but for the conveniences of the ship in loading or unloading, it is more reasonable and equitable to apply the analogies of the municipal law in regard to the obligation of owners and masters, rather than to extend the limited rule of responsibility under the ancient maritime law to these new, modern conditions, for which those limitations were never designed. And, in applying the analogies of the municipal law, the helplessness of seamen, and the imperative duty of obedience, as I have above said, ought to impose upon masters and owners the highest rule of diligence and care in ascertaining the sufficiency of all such modern appliances for the exigencies to which they are to be subjected. As that was not done in this case, the breaking of the derrick through its own insufficiency must be deemed evidence of negligence on their part, which equitably imposes the consequences upon them, rather than upon the seaman, who is an innocent sufferer through their want of proper care.

The injuries to the libelant were severe. He was partially paralyzed; but, after being cured so far as possible, he is permanently disabled from pursuing his former occupations, though able to follow lighter pursuits upon land. On the whole, I think $1,500 will be a proper allowance by way of damages, with costs.