THE ARIZONA ET AL. *v.* ANELICH, ADMINISTRATRIX.

No. 667. Argued April 1, 2, 1936.—Decided April 27, 1936.

*Mr. Ralph S. Pierce* for petitioners.

114

*Mr. Wilbur Zundel,* with whom *Mr. Samuel B. Bassett* was on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

In this case certiorari was granted because of the importance of the question, to review a determination of the Supreme Court of the State of Washington, 183 Wash. 467; 49 P. (2d) 3, that assumption of risk is not a defense to an action brought under the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, to recover damages for the injury and death of a seaman caused by a defective appliance, a part of the equipment of a fishing vessel on which he was employed.

The injury occurred at sea, when respondent's intestate was engaged in hauling in, with a power winch, the purse line of a fishing net. During this operation the drums of the winch, as was customary, were kept in continuous revolution at a speed of about eighty revolutions per minute. The two ends of the purse line, whose function is to purse, or close, the net at the bottom, were reeved through blocks hanging from a davit at the side of the vessel, from which they ran respectively to the aft and forward drums of the winch. Decedent was stationed at the aft drum, where his duty, like that of the winchman at the forward drum, was to take several turns of his end of the purse line about the revolving drum and

hold the line taut, so that the winch would haul it in, and to coil the line as it came off the drum. When the rings at the bottom of the net through which the purse line passes came to the surface of the water, a bridle, or strap, was passed around the net and rings and attached to block and tackle suspended from a boom of the vessel. The purse line is then customarily thrown off the drums, and the net is raised higher by taking several turns about the forward drum with the line from the block and tackle, which then carries a load of about a ton and a half, and hauling on it. It was at this stage of the operation that decedent was injured. The purse line had been removed from the forward drum, and several turns of the line from the block and tackle, which was supporting the net, had been taken around this drum, when, in some way which does not clearly appear, the decedent's leg became entangled in the purse line, which was not clear of the aft drum. Before the winch could be stopped his leg was drawn onto the drum by the purse line, the bones were broken and the flesh lacerated. Septicemia ensued, from which he died.

Power was transmitted to the winch by a countershaft connected by a chain gear drive with the main, or propeller, shaft. There were two methods for starting and stopping the winch. One was by the operation of a lever located between decks, near the engine, which controlled the clutch on the main shaft. The other was by a lever located above deck, on the starboard side of the winch frame, between the drums, by which the jaws of the clutch connecting with the chain drive of the winch could be engaged with the corresponding jaws of the clutch keyed onto the main shaft. Attached to the winch frame by a string was a forked piece of wood designed for use as a brace to hold the winch lever in a position which would cause the clutch to engage, and prevent its slipping

or disengaging while the winch was in motion. When placed in position this brace extended from a cleat on the frame of the winch to the winch lever.

It is respondent's contention that the clutch was so defective, through long wear, that it would not remain engaged without the use of the brace to hold it in position; that the presence of the brace in position at the moment of the accident so prevented or delayed use of the lever at the winch that it was necessary to use the lever below deck to disengage the clutch on the main shaft in order to stop the winch; and that the consequent delay, after the alarm was given, was the proximate cause of decedent's injury.

The trial court refused petitioners' request to charge that voluntary assumption by decedent of the risk of injury by the unsafe appliance was a defense to the action, and denied their motion for a non-suit and for a directed verdict. It left it to the jury to say whether petitioners had negligently failed to provide decedent with a safe appliance with which to work, and whether such failure was the proximate cause of the injury and death. The state Supreme Court sustained the judgment of the trial court upon a verdict for respondent, holding that, in the circumstances disclosed by the evidence, assumption of risk is not a defense in a suit under the Jones Act.

We granted certiorari to review the ruling upon the assumption of risk, and not for the purpose of reëxamining the evidence of negligence and proximate cause. With respect to the latter, it suffices to say that, although the testimony was conflicting, there was evidence from which the jury could have found that the clutch controlled by the lever at the winch was negligently allowed to remain in a defective condition; that because of the defect it would not remain engaged and the winch drums would not turn continuously unless the lever controlling the clutch was

held in position by the brace; that the use of the brace to prevent the worn clutch from slipping or disengaging rendered the winch defective, and unsafe to those required to work in its vicinity, and that the use of the brace, and the consequent delay in stopping the winch from the engine room, when the alarm was given, was the proximate cause of the injury and death. We do not discuss other questions of lesser moment, including those growing out of the alleged negligent failure of petitioners to provide decedent with prompt and appropriate medical attention as a contributing cause of his death, but direct our attention to the question brought here for review, whether assumption of risk is a defense to suits under the Jones Act.

Since the maritime law allowed no recovery for the wrongful death of a seaman, see *Lindgren* v. *United States,* 281 U. S. 38, respondent's asserted right of action is conferred by § 33 of the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, which gives to a seaman injured in the course of his employment, at his election, a right of action for damages at law, with trial by jury, in which "all statutes of the United States modifying or extending the common law right or remedy in case of personal injury to railway employees shall apply." In case of the death of the seaman, as a result of the injury, it similarly gives a right of action to his personal representatives in which "all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable."

Section 1 of the Federal Employers' Liability Act, 35 Stat. 65, 45 U. S. C. § 51, thus incorporated in the Jones Act by reference, gives a right of recovery for the injury or death of an employee of a common carrier by rail, in interstate or foreign commerce, "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or

insufficiency, due to its negligence, in its . . . appliances, machinery . . . or other equipment." By § 3 of the Act, 45 U. S. C. § 53, contributory negligence does not bar recovery, but is ground for apportionment of the damages between employer and employee, and by §§ 3 and 4, 45 U. S. C. §§ 53, 54, it is provided that no employee shall be held to have been guilty of contributory negligence or "to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The Jones Act thus brings into the maritime law new rules of liability. The source from which these rules are drawn defines them but prescribes nothing as to their operation in the field to which they are transferred. "In that field their strength and operation come altogether from their inclusion in the maritime law" by virtue of the Jones Act. The election for which it provides "is between the alternatives accorded by the maritime law as modified and not between that law and some non-maritime system," *Panama Railroad Co.* v. *Johnson,* 264 U. S. 375, 388, 389; and see *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, 380, 381; *Pacific S. S. Co.* v. *Peterson,* 278 U. S. 130.

In applying the Federal Employers' Liability Act, in suits brought by railroad employees, it has been settled by numerous decisions of this court that assumption of risk is a defense in a suit brought to recover for injuries resulting from defective appliances, the use of which is not required by the Federal Safety Appliance Act, see *Seaboard Air Line Ry. Co.* v. *Horton,* 233 U. S. 492; *Jacobs* v. *Southern Ry. Co.,* 241 U. S. 229; *Boldt* v. *Pennsylvania R. Co.,* 245 U. S. 441, 445. The fact that the statute deals with and extends a common law form of liability, provides for its enforcement in common law courts, and prescribes that certain common law defenses, including assumption

of risk, shall not be available in specified cases, led to the conclusion that such defenses, when not excluded by the terms of the statute, are impliedly authorized.

But the Jones Act does not, by its own terms, or by those adopted by reference from the Employers' Liability Act, prescribe that assumption of risk shall be a defense to the liability imposed for injuries to seamen on navigable waters, or, apart from the specific references to the fellow servant and contributory negligence rules, purport to enlarge or modify the defenses available in maritime law to suits brought to recover for such injuries. In the absence of such a definite command the scope of the new rules of liability and the nature of the defenses to them must be ascertained by reference to their new setting in the admiralty system.

While the martime law before the enactment of the Jones Act permitted no recovery for injuries resulting in the death of a seaman, or generally for injuries resulting from the negligence of a fellow servant or the master,[1] a seaman who fell sick or was injured in the course of his employment was entitled to "maintenance and cure," "at least as long as the voyage continued," see *Pacific Steamship Co.* v. *Peterson, supra,* and to recover from vessel or owner indemnity for injuries due to unseaworthiness of the vessel or "failure to supply and to keep in order the proper appliances appurtenant to the ship." These propositions were laid down in answering certified questions in *The Osceola,* 189 U. S. 158, 175, and they have often been cited with approval by this Court. See *Chelentis* v. *Luckenbach S. S. Co., supra,* 379,

---

[1] In *The Osceola,* 189 U. S. 158, the Court did not answer the certified question, whether the master is a fellow servant, since it concluded that in any event the owners were not liable generally for injuries resulting from negligence unless they were occasioned by unseaworthiness or defect in appliances appurtenant to the ship.

380; *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255; *Pacific Steamship Co.* v. *Peterson, supra,* 134; *Lindgren* v. *United States, supra.*

In declaring, in *The Osceola,* without qualification as to the assumption of risk, that the owner and vessel were liable to indemnify seamen for injuries caused by unseaworthiness of the vessel, and that unseaworthiness embraced defective appliances appurtenant to the ship, this Court adopted the pronouncements of many earlier cases in admiralty in which the rule was applied or recognized.[2] It was definitely applied by this Court in *Carlisle Packing Co.* v. *Sandanger, supra;* cf. *Plamals* v. *S. S. Pinar del Rio,* 277 U. S. 151, 155.

[2] The seaman's right of indemnity for injuries caused by defective appliances or unseaworthiness seems to have been a development from his privilege to abandon a vessel improperly fitted out. The privilege was recognized in *Dixon* v. *The Cyrus,* 2 Pet. Adm. 407 (D. C. Pa. 1789), where it was held that the law will imply an engagement to the mariners that "the ship shall be furnished with all the necessary and customary requisites for navigation, or, as the term is, shall be found seaworthy." This case was relied on in several early cases recognizing the seaman's right to consequential damages for injuries resulting from faulty equipment. *Halverson* v. *Nisen,* 3 Saw. 562; *The Noddleburn,* 28 Fed. 855; *The Lizzie Frank,* 31 Fed. 477; and see *The Wenonah,* 1 Hask. 606. The rule that unseaworthiness releases the seaman from his contract is of uncertain origin, but it is closely related to the master's obligation to owner and shipper that the vessel be well equipped and ballasted. See Marine Ordinances of Louis XIV, Book II, Art. VIII, Moloy, De Jure Maritimo et Navali, (7th ed. 1722) p. 223. The seaman's right of indemnity was sustained in *The City of Alexandria,* 17 Fed. 390; *The Edith Godden,* 23 Fed. 43; *Olson* v. *Flavel,* 34 Fed. 477; *The A. Heaton,* 43 Fed. 592; *The Frank and Willie,* 45 Fed. 494; *The Julia Fowler,* 49 Fed. 277. A seaman was denied recovery for injuries in *Couch* v. *Steele,* 3 El. & Bl. 402 (1853), on the ground that the owner owed to seamen no duty to make the vessel seaworthy. This case was disapproved in *The Noddleburn, supra,* 857, which allowed recovery for an injury due to defective rigging. The Mer-

Before the Jones Act contributory negligence was ground for mitigation of damages in suits brought by seamen to recover for injuries attributable to defective equipment, see *The Wanderer,* 20 Fed. 140; *Olson* v. *Flavel,* 34 Fed. 477, overruling *Peterson* v. *The Chandos,* 4 Fed. 645; *The Frank and Willie,* 45 Fed. 494; *The Julia Fowler,* 49 Fed. 277; *John A. Roebling's Sons Co.* v. *Erickson,* 261 Fed. 986, 987; *Cricket S. S. Co.* v. *Parry,* 263 Fed. 523; *Storgard* v. *France & Canada S. S. Corp.,* 263 Fed. 545; *Panama R. Co.* v. *Johnson,* 289 Fed. 964, aff'd 264 U. S. 375. But no American case appears to have recognized assumption of risk as a defense to such a suit. In numerous cases this defense was either denied or ignored in circumstances plainly calling for its application had it been available. *Halverson* v. *Nisen,* 3 Saw. 562; *The Edith Godden,* 23 Fed. 43; *The Julia Fowler, supra; The Noddleburn,* 28 Fed. 855; *Olson* v. *Flavel, supra; The A. Heaton,* 43 Fed. 592; *Lafourche Packet Co.* v. *Henderson,* 94 Fed. 871; *Globe S. S. Co.* v. *Moss,* 245 Fed. 54; *The Colusa,* 248 Fed. 21; *Cricket S. S. Co.* v. *Parry, supra.*

The seaman assumes the risk normally incident to his perilous calling, see *The Iroquois,* 194 U. S. 240, 243; *Cricket S. S. Co.* v. *Parry, supra,* but it has often been pointed out that the nature of his calling, the rigid discipline to which he is subject, and the practical difficulties of his avoiding exposure to risks of unseaworthiness and

---

chant Shipping Act of 1876, 39–40 Vict. Ch. 80, § 5, provided that there should be imported into every contract of service between the owner of the vessel and the seamen on board an implied obligation "that the owner of the ship and the master, and every agent charged with the loading of the ship or the preparing thereof for sea or the sending thereof to sea shall use all reasonable means to insure the seaworthiness of the ship for the voyage at the time when the voyage commences and to keep her in a seaworthy condition for the voyage during the same." See *Hedley* v. *Pinkney & Sons S. S. Co.,* [1894] A. C. 222, strictly construing this statute.

defective appliances, make such a defense, as distinguished from contributory negligence, see *Seaboard Air Line Co.* v. *Horton, supra,* 503; peculiarly inapplicable to suits by seamen to recover for the negligent failure to provide a seaworthy ship and safe appliances. See *The Colusa, supra,* 24, 25; *Cricket S. S. Co.* v. *Parry, supra,* 526; *Grimberg* v. *Admiral Oriental S. S. Line,* 300 Fed. 619, 621; *U. S. Shipping Board E. F. Corp.* v. *O'Shea,* 55 App. D. C. 300; 5 F. (2d) 123, 125; *States S. S. Co.* v. *Berglann,* 41 F. (2d) 456, 457.

Like considerations, and others to be mentioned, require a like conclusion with respect to the modified and in some respects enlarged liability imported into the maritime law by the Jones Act. The legislation was remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty. Its purpose was to enlarge that protection, not to narrow it. Cf. *Chelentis* v. *Luckenbach S. S. Co., supra.* Its provisions, like others of the Merchant Marine Act, of which it is a part, are to be liberally construed to attain that end, see *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 375; *Jamison* v. *Encarnacion,* 281 U. S. 635, 639; *Alpha S. S. Corp.* v. *Cain,* 281 U. S. 642; *Warner* v. *Goltra,* 293 U. S. 155, 157, 160, and are to be interpreted in harmony with the established doctrine of maritime law of which it is an integral part. The denial in the Federal Employers' Liability Act of the defense of assumption of risk refers only to suits founded on the Federal Safety Appliance Act, applicable alone to railroads. It can raise no inference as to the availability of the defense in suits brought to recover for injuries to seamen. No provision of the Jones Act is inconsistent with the admiralty rule as to assumption of risk. The purpose and terms of the Act and the nature of the juristic field in which it is to be applied, preclude the assumption that Congress intended, by its adoption, to modify that rule by implication. Such has been the conclusion

124

reached generally by the lower federal courts, although not with entire unanimity.[3]

*Affirmed.*

---

[3] Denying the defense: *Grimberg* v. *Admiral Oriental S. S. Line,* 300 Fed. 619; *U. S. Shipping Board E. F. Corp.* v. *O'Shea,* 55 App. D. C. 300; 5 F. (2d) 123; *Coast S. S. Co.* v. *Brady,* 8 F. (2d) 16; *Zinnel* v. *U. S. Shipping Board E. F. Corp.,* 10 F. (2d) 47; *Howarth* v. *U. S. Shipping Board E. F. Corp.,* 24 F. (2d) 374; *Masjulis* v. *U. S. Shipping Board E. F. Corp.,* 31 F. (2d) 284; *States S. S. Co.* v. *Berglann,* 41 F. (2d) 456; *United States* v. *Boykin,* 49 F. (2d) 762; *Ives* v. *United States,* 58 F. (2d) 201; *Pittsburgh S. S. Co.* v. *Palo,* 64 F. (2d) 198; *Hanson* v. *Luckenbach S. S. Co.,* 65 F. (2d) 457; *The New Berne,* 80 F. (2d) 244.   Contra: *The Ipswich,* 46 F. (2d) 136; *Stevens* v. *R. O'Brien & Co.,* 62 F. (2d) 632.