## FARINA v. UNITED STATES et al.
### No. 2018 Admiralty.

United States District Court
E. D. Louisiana, New Orleans Division.
Jan. 14, 1953.

Amos L. Ponder, Jr., New Orleans, La., for libelant.

John N. McKay, U. S. Atty., and Francis A. Ledet, Asst. U. S. Atty., New Orleans, La., for respondents.

Edward J. Boyle, New Orleans, La., for intervener, T. Smith & Son, Inc.

WRIGHT, District Judge.

Libelant, a longshoreman, was injured when he fell through a hatch opening in Inland Waterways Corporation Barge No. 254. He alleges unseaworthiness and unsafe place to work as the cause of his injuries. T. Smith & Son, Inc., libelant's employer, has intervened claiming reimbursement for compensation paid libelant and medical expenses incurred in his behalf. Respondents deny libelant's allegations of unseaworthiness and unsafe place to work, and alternatively allege contributory negligence. Respondents have also filed a petition under Admiralty Rule 56, 28 U.S.C.A., impleading the employer of libelant, T. Smith & Son, Inc., claiming indemnity or contribution. The issues of fact and law having come on to be heard on the pleadings and proofs of the parties and due deliberation having been had, the court now makes the following findings of fact and conclusions of law:

### Findings of Fact

1. The barge IWC 254, owned and operated by Inland Waterways Corporation, was delivered to T. Smith & Son, Inc., a stevedoring firm, on the morning of October 6, 1950 for loading with sulphur from the S. S. Sprague. At the time the IWC 254 was empty with its hatches covered and tarpaulins battened down.

2. The IWC 254 is 300 feet in length, 48 feet in width and approximately 15 feet from the apex of the hatch covering to the bottom of the vessel. It is a steel riveted barge of the "Hopper" type. Its hatches are covered by metal boards each 9' 10" long, 17" wide and weighing approximately 75 pounds. The hatch boards run longitudinally and rest on coamings 3" wide on either side, fore and aft, of the hatch.

3. Libelant, along with other employees of T. Smith & Son, Inc., was assigned to assist in the loading operation of IWC 254. At the time of his injury he was one of four employees assigned to uncover hatch No. 5. Pursuant to this assignment, Farina and his three fellow employees, after unloosening the battens of the tarpaulin covering hatch No. 5, deployed themselves along the forward edge of the hatch preparatory to walking and folding the tarpaulin sternward where it could be placed clear of the hatch.

4. After disposing of the tarpaulin, Farina and one other employee were to walk back over the hatch covering to the forward side where they were to assist the other two employees who remained on the after side of the hatch in removing the metal hatch boards. Each hatch board was to be removed by two men working from either side of the hatch. As Farina stepped on the hatch boards to return to the other side of the hatch opening, the hatch board on which he rested his weight slipped from its coaming and the libelant was catapulted to the bottom of the barge some 15 feet below.

5. The method of uncovering a hatch used by Farina and his fellow employees is standard practice and procedure in the port of New Orleans. Considering the nature of the work performed by longshoremen, it was not a dangerous practice per se.

6. Farina's right elbow was crushed in the fall. After six operations and much hospitalization Farina's right arm has now reached its maximum benefit from medication. The testimony is uncontradicted that he has permanently lost fifty percent

of the use of his right arm. Consequently, he is unable to do longshoreman's work or any work requiring hard physical labor.

7. Investigation of the coaming on hatch No. 5 showed that the coaming was badly bent in several places on both sides. It was the condition of this coaming which caused the hatch board to slip and Farina to fall. There were no contributing causes.

8. Francis Farina at the time of the accident was 31 years of age. His hourly rate of pay was $1.21. His education was minimal.

9. Respondent impleaded, T. Smith & Son, Inc., was free from negligence in connection with the accident and the libelant was not guilty of contributory negligence.

Conclusions of Law

1. This court has jurisdiction of the parties and the subject matter of this suit and venue is properly laid in the Eastern District of Louisiana. 28 U.S.C. § 1333; 46 U.S.C. §§ 741–752.

2. A shipowner's obligation of seaworthiness, traditionally owed by shipowners to seamen, extends to a stevedore who is injured while aboard and loading the ship, although employed by an independent stevedoring contractor engaged by the owner to load the ship. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

3. The respondents are liable to libelant for failure to furnish him with a safe place to work. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075; Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L. Ed. 265; Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561.

4. The respondents being wholly at fault, the petition filed under Rule 56 against T. Smith & Son, Inc., must be dismissed.

5. Libelant is entitled to a decree in the amount of $15,000 for his injuries.

Let a decree be prepared pursuant to these findings.