**Naomi E. BRISCO, etc., Plaintiff,**

v.

**AMERICAN PRESIDENT LINES, LTD., etc., Defendant.**

**No. 47551.**

United States District Court,
N. D. California.

Jan. 8, 1970.

Jarvis, Miller & Stender, Martin J. Jarvis, San Francisco, Cal., for plaintiff.

Hamilton & King, Mark Scott Hamilton, San Francisco, Cal., for defendant.

---

## AMENDED MEMORANDUM OPINION

WOLLENBERG, District Judge.

### I.

The complaint in this case was brought by Naomi E. Brisco individually and as administratrix of the estate of Eugene D. Brisco, a longshoreman who, according to the complaint, met his death while performing duties connected with the unloading of the SS. President Roosevelt, a vessel owned and operated by the defendant. Plaintiff offers two theories upon which recovery could be based: (1) defendant failed to provide a seaworthy vessel and equipment to plaintiff, and this failure contributed to plaintiff's death; (2) defendant negligently failed to provide reasonably safe working conditions for plaintiff, and this breach of duty contributed to plaintiff's death. The case was tried before this Court on June 16–18, 1969, and a Memorandum Opinion filed on December 2, 1969. Plaintiff moved to amend this opinion under Rule 52(b), which motion was argued before the Court on December 18, 1969. Upon consideration of all relevant oral arguments and memoranda filed herein the Court hereby amends its earlier opinion to read as follows:

Defendant finds fault with plaintiff's general jurisdictional claim under 46 U.S.C. § 740, saying that "none of the allegations nor the facts of record can, in any way, be construed to allege negligence 'caused by a vessel'". This Court finds that general jurisdiction does exist under the Maritime Extension Act, 46 U.S.C. § 740, in that it has been alleged that defendant committed a tort while or before his ship was being unloaded and that the impact of that tort was felt ashore "at a time and place not remote from the wrongful act." Gutierrez v. Waterman SS. Corp., 373 U.S. 206, 210, 83 S.Ct. 1185, 1188, 10 L.Ed.2d 297 (1963). More specifically, there is here an allegation of defectively functioning sideport doors, of an unsafe work method chosen by ship's personnel, and of inadequate working equipment furnished to decedent. So long as there are such allegations, clearly not frivolous, of an injury caused by a vessel upon navigable waters, jurisdiction lies with this court.

Defendant further argues that decedent, being a longshoreman assigned to sort baggage, was not performing work traditionally done by seamen, and this being the situation, was not entitled to the special benefits of the strict liability doctrine of seaworthiness. The Court however finds that decedent was performing traditional seaman's work when he died. The test is not what duties were assigned to decedent when he reported for work, but rather the nature of the work he was doing when injured. The evidence shows that longshoremen on the docks in question have on occasion helped open the sideport doors of vessels preparing to unload cargo, and that this has been done by pushing the

doors with sticks or with a forklift. This service was obviously one done *for the ship* in connection with the ship's duty to discharge its cargo. The duty to provide a seaworthy vessel and ship's gear does extend to longshoremen "performing a service for the ship in the discharge of its cargo". Partenweederei, MS Belgrano v. Weigel et al., 299 F.2d 897, 901 (9 Cir. 1962), citing Pope & Talbot, Inc. v. Cordray, 258 F.2d 214, 218 (9 Cir. 1958). The latter case involved a ship whose duty to unload its cargo was also made clear by contract, but Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) makes it clear that loading and unloading of cargo is traditionally "work of the sea".

■ Jurisdiction being in the Court, and decedent being entitled to the protections of the doctrine of seaworthiness, there remains for the Court to decide if any unseaworthiness of defendant's vessel, or any negligence of the defendant caused, in whole or in part, the death of plaintiff's decedent. Assumption of risk doctrines are not applicable in cases of this sort; nor will any contributory negligence on the part of decedent totally bar recovery by him, unless it be shown that his own negligence was the sole cause of the injury sued upon. See 4 Benedict on Admiralty 203–04; Geotechnical Corp. of Delaware v. Pure Oil Co., 196 F.2d 199 (5 Cir. 1952); The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936).

## II.

### FINDINGS OF FACT

1. Eugene D. Brisco, plaintiff's decedent, died as a result of an accident which occurred on July 5, 1968. At the time of his death he was performing a service for defendant's ship in connection with the ship's duty to unload its cargo. In order to unload the ship's cargo, it was necessary to open the vessel's side-port doors. It was while he was aiding in the performance of this function that Brisco fell to his death.

2. At the time the sideport doors were to be opened, the vessel was listing. This list was no more than two degrees. This list made it more difficult to open the sideport doors. Plaintiff has alleged that this difficulty was increased even more by accumulated rust and paint on the hinges of the doors. This is not supported by the evidence. However, it is clear that in any case the seamen inside the ship were unable to push open the sideport doors without the aid of persons on the dock. There is no evidence that this fact alone constituted "unseaworthiness" within the meaning of the applicable law.

3. Finding that the sideport doors could not be opened from inside the ship, Mr. Neilson, the ship's carpenter, hailed decedent, who was then on the dock, to help with the task. Neilson handed decedent a 2x4 with which to do this. This method of pushing open the sideport doors from the apron of the dock, with the aid of a stick or a forklift, had been used in the past and did not entail any significant danger of falling off the pier.

4. Decedent, by pushing at the doors from the apron of the dock, succeeded in opening one of them so that it could be secured to the skin of the ship; the other door he found more difficult to open, and, when the door was about two inches from the side of the vessel, decedent climbed atop a greased slider plate such as are found on the bullrails required to be at the edges of all San Francisco piers. No one denied that standing on top of these rails, which are designed to prevent men and equipment from falling into the water, is a dangerous practice. Such rails are not intended as working surfaces and are not customarily used as such.

■ 5. No member of the ship's crew directed decedent to climb atop the slider plate. This was his own decision, a decision which was all the more negli-

gent for a man who was aware of his weak legs and faulty sense of balance. It was testified that there were longer pieces of dunnage available on the dock, and the Court finds that due diligence by decedent required that he seek out this or some other aid in opening the doors rather than climb on top of the bull-rails. Decedent, however, chose to stand on the slider plate, and this choice was the sole cause of his fatal fall. See Geo-technical Corp. of Delaware v. Pure Oil Co., cit. *supra.*

### III.

This opinion shall serve as findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure. Defendant shall prepare the appropriate decree and judgment.