**UNITED CONTINENTAL TUNA CORPORATION, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 72–1189.

United States Court of Appeals, Ninth Circuit.

March 25, 1977.

* Honorable Spencer Williams, Northern District of California, sitting by designation.

Francis J. MacLaughlin, Lillick, McHose, Wheat, Adams & Charles, Los Angeles, Cal., argued for plaintiff-appellant.

Paul Gary Sterling, Admiralty & Shipping Sec., U. S. Dept. of Justice, San Francisco, Cal., William D. Keller, U. S. Atty., Los Angeles, Cal., Robert E. Kopp, Neil H. Koslowe, Rex E. Lee, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., argued for defendant-appellee.

Before CHAMBERS, CARTER and AN-DERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

## FACTS

In 1968 eight individual American citizens joined together to form a Philippine corporation, UNITED CONTINENTAL TUNA CORPORATION (Tuna), for the purpose of operating fishing vessels in Philippine waters. Tuna then purchased and refitted a fishing vessel, the M. V. Orient, to accomplish its purposes. On December 11, 1969, the M. V. Orient sailed from San Pedro, California, enroute to the Philippines. After proceeding only 70 miles, the Orient was overtaken and hailed by a United States destroyer, the U.S.S. Parsons. The Parsons pulled alongside the Orient and veered into the Orient, striking the Orient below its water line. The Orient sank within minutes and could not be salvaged.

## HISTORY OF THE LITIGATION

On January 14, 1970, Tuna Corporation filed the instant action (72–1189) against the United States, alleging causes of action under the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, and the Public Vessels Act, 46 U.S.C. §§ 781–790.[1] On May 25, 1971, Tuna filed a motion to substitute as plaintiffs the eight shareholders of Tuna and for leave to file an amended complaint. On June 1, 1971, the government moved for summary judgment against Tuna.

On October 18, 1971, the district court denied the motion for substitution of plaintiffs and the motion for leave to file an amended complaint. The district court also granted the government's summary judgment motion by holding that Tuna had failed to satisfy the reciprocity requirement of the Public Vessels Act in that Tuna could not establish that the Philippine government allowed United States nationals to sue in its courts under similar circumstances. Tuna timely filed its notice of appeal to this court.

1. 46 U.S.C. § 781 states:
   "A libel in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States: *Provided,* That the cause of action arose after the 6th day of April, 1920."

   46 U.S.C. § 785 states:
   "No suit may be brought under this chapter by a national of any foreign government unless it shall appear to the satisfaction of the court in which suit is brought that said government, under similar circumstances, allows nationals of the United States to sue in its courts."

While the Tuna case (72–1189) was on appeal, the eight individual shareholders, on June 27, 1972, filed a supplementary action, *Kroh et al. v. United States*, (73–2417) against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), et seq. On February 15, 1973, the district court granted summary judgment in favor of the government in holding that by reason of the judgment in the Tuna action (72–1189), the shareholders' claim was cognizable solely in admiralty and not under the Federal Tort Claims Act. The shareholders timely filed their notice of appeal to this court.

Although 72–1189 and 73–2417 were never formally consolidated, they were argued together and decided in a single opinion. *United Continental Tuna Corporation v. United States*, 499 F.2d 774 (9th Cir. 1974). This court held that the 1960 amendment to the Suits in Admiralty Act rendered the reciprocity provision of the Public Vessels Act inapplicable and therefore Tuna's claim was cognizable under the Suits in Admiralty Act. This court also held that since this suit (72–1189) was maintainable under the Suits in Admiralty Act, the supplementary action (73–2417) was therefore not cognizable under the Federal Tort Claims Act. The government successfully petitioned for a writ of certiorari in 72–1189. 420 U.S. 971, 95 S.Ct. 1390, 43 L.Ed.2d 651. The shareholders did not appeal the decision in 73–2417 and the judgment was filed and spread in the district court.

On March 30, 1976, the Supreme Court reversed the decision of this court in 72–1189. *United States v. United Continental Tuna Corporation*, 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976). The Supreme Court held that "claims within the scope of the Public Vessels Act remain subject to its terms after the 1960 amendment to the Suits in Admiralty Act." 425 U.S. at 181, 96 S.Ct. at 1329. In remanding, the court noted:

"Respondent urges two additional grounds for affirmance. First, it contends that the reciprocity provision, even if applicable, does not bar its claim, because the owners of 99% of its stock are Americans and it is in substance an American owner. The District Court rejected this contention, and the Court of Appeals did not address it since it found the reciprocity provision inapplicable. Second, respondent argues that if it is considered a national of the Philippines, whose suit would fall within the prohibition of the reciprocity provision, that provision denies it due process in violation of the Fifth Amendment. This argument was not even presented to the District Court, and was not addressed by the Court of Appeals. We leave the consideration of these two additional contentions, to the extent they were adequately raised, to the Court of Appeals on remand."

425 U.S. 181–182, 96 S.Ct. 1329.

On May 10, 1976, this court entered an order restoring both *United Continental Tuna Corporation v. United States* (72–1189), and *Kroh et al. v. United States* (73–2417), to the active calendar of this court. On September 7, 1976, this court issued a corrective order removing *Kroh et al. v. United States* (73–2417), from the active calendar. This order of September 7, 1976, finally disposed of the appeal in 73–2417 and the case was thereby closed.

## ISSUES

As stated by the Supreme Court, there are two issues remaining for consideration:

1. Does the reciprocity provision bar the claim of a foreign corporation which is 99% owned by American citizens?

2. Does the reciprocity provision deny due process of law to a foreign corporation under the facts of this case?

## APPLICABILITY OF THE RECIPROCITY PROVISION

Appellant contends that since 99% of its corporation is owned by American citizens, this court should treat appellant as an American shipowner and accord it the rights and liabilities of an American shipowner, thereby precluding the effect of the reciprocity provision.

In support of its position, appellant cites *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). In *Hellenic*, a seaman, injured in the Port of New Orleans, filed suit under the Jones Act, 46 U.S.C. § 688, against the Greek corporate shipowner. 95% of Hellenic's stock was owned by a United States domiciliary who was also a Greek citizen. The corporation was managed from New York by this 95% stockholder. The injured seaman was a Greek citizen and his contract of employment provided that Greek law would apply and all claims would be adjudicated by a Greek court. The issue presented was whether there were substantial contacts with the United States so as to render Hellenic an "employer" under the Jones Act.

The Supreme Court disregarded the corporate nationality of the shipowner, finding that the shipowner had substantial and significant contacts with the United States. The Supreme Court stated:

"The flag, the nationality of the seaman, the fact that his employment contract was Greek, and that he might be compensated there are in the totality of the circumstances of this case minor weights in the scales compared with the substantial and continuing contacts that this alien owner has with this country."

398 U.S. at 310, 90 S.Ct. at 1734.

Emphasizing that its owners are American citizens, appellant seeks to apply this "contacts" test applicable in Jones Act cases to the present case arising under the Public Vessels Act.

We reject this invitation for two reasons: First, appellant is seeking to pierce its own veil for its own benefit. Appellant has cited no authority and we have found none which allows such a procedure. *Hellenic, supra,* involved just the opposite situation— the corporate veil was pierced for the benefit of the injured seaman, a result objected to by the corporate owner. The reasons for disallowing such a practice are obvious, the corporation could receive the benefits of the corporate structure when it was to its benefit to claim such an existence. On the other hand, the corporation could disregard the commensurate liabilities when such existence was not favorable simply by pointing to its "significant contacts" with the United States.

Secondly, the Jones Act is distinguishable from the Public Vessels Act. The purpose of the Jones Act was remedial in nature for the benefit and protection of seamen who are peculiarly wards of admiralty. *The Arizona v. Anelich,* 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936); *Cox v. Roth,* 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260 (1954). The Act was designed for this specific class of plaintiffs who are subject to rigorous discipline and an obligation to follow orders inherent in their profession. To further effectuate this purpose of protecting seamen the "contacts" test was announced to broaden the jurisdictional reach of the statute where there is a sufficient nexus between the defendant and this country so as to justify the assertion of jurisdiction. *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). When sufficient contacts are found, after analyzing the relevant factors, the ward of admiralty may sue a foreign shipowner in a United States Court.

In contrast, the Public Vessels Act was not designed for a particular class of plaintiffs. The Act was enacted to circumvent the rigors of sovereign immunity previously enjoyed by the potential defendant, the United States. *Canadian Aviator, Ltd. v. United States,* 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901 (1945). Although a seaman, if injured by an act of a United States public vessel, could recover under this Act, it was not specifically enacted for the seaman's sole benefit, as was the Jones Act. The underlying concern for the protection of the seaman is not present in the Public Vessels Act and certainly not in the present case. Implementing the "contacts" test as utilized in Jones Act cases would not further the central purpose of the Public Vessels Act. The Act itself has achieved its purpose—removal of the sovereign immunity defense.

Additionally, the eight American shareholders, of their own volition, chose to in-

corporate under the laws of the Philippines. Appellant argues that they did so because Congress provided tax and other incentives to encourage Americans to invest in businesses in the Philippines and other friendly underdeveloped countries. Nonetheless, it was appellant's choice to partake in such incentives and to incorporate under the laws of the Philippines. By such choice appellant has excluded itself from that class of plaintiffs who enjoy the removal of the sovereign immunity defense.

## CONSTITUTIONALITY OF THE RECIPROCITY PROVISION

■ It must first be pointed out, as conceded by appellant, that this contention was not raised in the district court and therefore will not be reviewed by this court unless "there are significant questions of general impact or when injustice might otherwise result." *Krause v. Sacramento Inn*, 479 F.2d 988 (9th Cir. 1973). Since appellant is being denied access to the only forum available to litigate its claims by the very statute claimed to be unconstitutional, we will review its contentions to avoid this possible injustice.

Appellant argues that the reciprocity provision, 46 U.S.C. § 785, denies it due process in violation of the Fifth Amendment. The thrust of this argument is that there is no basis to include in the class of persons who are prohibited by the reciprocity statute from suing the United States, those citizens of countries who can be sued by the United States Government even though their country does not allow a suit against it by a United States citizen. In effect, they argue that there is no true reciprocity in the present case—the United States Government can sue a Philippine national, but a Philippine national cannot sue the United States Government.

■ The Fifth Amendment, as well as the Fourteenth Amendment, protects aliens from deprivation of life, liberty or property

without due process of law. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950). However, as stated recently by the Supreme Court in *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976):

"The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogenous legal classification. For a host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class and not the other; [2] . . ." 426 U.S. at 78, 96 S.Ct. at 1890.

The *Mathews* court also stated:

". . . the party challenging the constitutionality of the particular line Congress has drawn has the burden of advancing principled reasoning that will at once invalidate that line and yet tolerate the different line separating some aliens from others." 426 U.S. at 82, 96 S.Ct. at 1892.

■ The obvious purpose for the reciprocity statute is that Congress did not want to open our courts to foreign nationals when their countries would not allow United States citizens access to their courts. This is a rational classification and allows the legitimate distinction here between aliens of different countries. The position advanced by appellant which would allow a foreign national to sue our government when our government is able to sue that foreign national in that country's court would defeat this purpose. Our citizens would still be unable to sue in the foreign country's courts, a situation Congress hoped to remedy by the reciprocity statute.

Moreover, we perceive this situation to be one where the judiciary should refrain from

**2.** In a footnote to the above quotation the Supreme Court cited numerous statutes which provide for "disparate treatment of aliens and citizens," including those which "condition equal treatment of an alien upon reciprocal treatment of United States citizens by the alien's own country." See 10 U.S.C. § 7435(a) and 28 U.S.C. § 2502.

attempting to draw its own lines and to expand the classification made, especially when the classification has a sound rational basis. The following language from *Mathews v. Diaz, supra*, is most appropriate:

> For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the legislature or the executive than to the judiciary.

For the reasons stated above, the original proceeding in the District Court, which granted summary judgment in favor of the government, is AFFIRMED.