## BOSTON, C. C. & N. Y. CANAL CO. v. SEABOARD TRANSP. CO. (two cases).*

(Circuit Court of Appeals, First Circuit.    January 21, 1921.)

### Nos. 1472, 1473.

1. Canals ⬤⟿29—Facts to be proved to show negligence in taking steamer through canal stated.

A finding that the sheering of a steamship while passing through a canal, causing her to strike the bank, was due to the negligence of the canal company in attempting to take it through the canal without the help of tugs, cannot be sustained, unless the steamship owner has sustained the burden of proving that the accident was not due to usual and unavoidable dangers of using such a waterway, or to defective steering gear, that the danger of taking the vessel into the canal was sufficiently

obvious, so that men of ordinary prudence, with the knowledge possessed by the canal officials, would not have permitted the attempt, and that the use of a tug would have so obviously lessened the danger as to make it negligence not to use a tug.

2. **Canals ⬮⇒29—Company not negligent because accident shows steamer should not have been taken through canal without tug.**

A canal company cannot be charged with negligence in attempting to take a steamship through the canal without the help of tugs merely because canal officials and other prudent people would now conclude, from the occurence of an accident, that vessels like the one in question should not make the attempt.

3. **Evidence ⬮⇒571(3)—Mere conclusion on conflicting expert evidence held not to show negligence.**

A conclusion, on conflicting expert evidence, that in taking a steamship through a canal a tug would have been a safeguard, does not show negligence on the part of the canal company in not using a tug, unless there is such a consensus of opinion among competent and prudent men as to the use of a tug as to make it negligence not to use it.

4. **Canals ⬮⇒30—Evidence held insufficient to show negligence in not using tug for steamship.**

Evidence *held* insufficient to show negligence on the part of a canal company in attempting to take a steamer through the canal without the help of tugs.

5. **Negligence ⬮⇒1—Definition of "negligence."**

"Negligence" is failure to conform to the standard of the reasonably prudent man, or, broadly speaking, a departure from the normal, or what should be the normal.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

6. **Negligence ⬮⇒1—Failure to reach on doubtful question same conclusion as court not necessarily negligence.**

It is not necessarily negligence to fail to reach on a doubtful question the same result that the court reaches, after carefully weighing the conflicting opinions of equally honest and competent witnesses.

7. **Negligence ⬮⇒1—Act in doubtful situation not negligence.**

When prudent and careful men, equally competent to judge of a difficult and doubtful situation, hold diametrically opposite views as to which of two courses is safer, the adoption of either course cannot be negligence.

8. **Canals ⬮⇒30—Evidence held insufficient to show negligence in admitting particular steamship on particular tide.**

Evidence *held* insufficient to show that a canal company was negligent in allowing a steamship of a particular type to go through the canal on a favoring full moon flood tide.

9. **Negligence ⬮⇒134(1)—Proof essential.**

Negligence must be proved by a fair preponderance of the evidence, and must not be guessed, because of the absence of other fully satisfactory explanation of an accident.

Appeals from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Cross-libels in admiralty by the Boston, Cape Cod & New York Canal Company against the Seaboard Transportation Company and by the Seaboard Transportation Company against the Boston, Cape Cod & New York Canal Company. Decree for the Transportation

⬮⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Company in each case, and the Canal Company appeals. Decrees vacated, and cases remanded, with directions.

Thomas H. Mahony and Samuel H. Pillsbury, both of Boston, Mass. (Currier & Young, of Boston, Mass., on brief), for appellants.

Edward E. Blodgett and Albert T. Gould, both of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. These cross-libels in admiralty grew out of the stranding and sinking in the Cape Cod Canal of the steamer Chisholm on July 16, 1916. The Canal Company contends that the accident was due to a break in the pintle which held the lower part of the ship's rudder in place. The ship's owner contends that the accident was caused by the negligence of the canal officials in taking the ship into the canal on a full moon flood tide running about 4 knots an hour, without a tug. In the court below the owner prevailed; the Canal Company was held liable for a total loss of $321,740.87, besides costs. Both cases are here on appeal, on a record of some 800 pages. In the view we take of the cases the controlling facts may be briefly stated:

The Chisholm was an old coal freighter, built in 1884, about 246 feet long, 37 feet wide, drawing about 18 feet loaded, with a normal speed of about 8 knots. She had a bluff bow, straight sides, heavy bilges, a flat bottom, with a rather short and sharp run to the stern. Her rudder hung supported from the deck, and was held in place at the lower end by a pintle running through a projecting skeg. Such vessels, so equipped, are common. She arrived loaded at Wing's Neck, the western entrance of the approach to the canal, about 5 p. m., July 16, anchored and signaled for a pilot. Pilot Rochester, in the employ of the Canal Company, was sent to take her through the canal. Rochester had been a United States licensed pilot for inland waters for 35 years, and was the most experienced pilot in the employ of the company. He had taken the Chisholm through, loaded, in the same direction, 45 days before. He had also several times piloted the Devereaux, a sister ship of practically the same build. Both ships had handled well. He had never had an accident. He regarded the condition of the tide as proper for the passage of the Chisholm. He—and practically all the other witnesses agree with him—stated that a favoring tide is better and safer than a head tide. They also agree that a slack tide is better than either a head or a favoring tide. The weather was pleasant, with a gentle southwest wind. Everything was most favorable for the passage, excepting that the tide was, because of the full moon, running with somewhat more than its average strength. But such tides occur twice each month. The pilot took charge, and the Chisholm proceeded towards the Buzzards Bay entrance of the canal with Rochester and Capt. Pierce on the bridge. Rochester gave the orders; Pierce repeated them through a hole in the bridge to the steers-

man below. As they approached the entrance proper, both the captain and the pilot noticed that the tide was running rather strong, and mentioned taking a tug, two of which lay available for use, without extra charge, near the Buzzards Bay entrance; but neither thought a tug was necessary. Rochester regarded a tug as undesirable. In effect they agreed not to take a tug. So far the ship handled perfectly. She passed into the canal proper, and through the railroad bridge and the Bourne highway bridge safely. A few hundred feet beyond the highway bridge she took a sheer toward the north bank. The helm was ordered aport, and the vessel resumed her proper course. But 500 to 1,000 feet further along she took another sheer. The helm was again ordered aport, but, the vessel not obeying, the order to hard aport was given. Not obeying, the engines were ordered reversed; but the Chisholm kept her sheer and struck her bow against the north bank. The tide then swung her stern across the canal, striking the south bank heavily. About that time, as we think—the evidence does not show clearly just when—the rudder chain parted; the vessel was then entirely unmanageable. Tugs were signaled for, and with their assistance she was finally tied up at some dolphins, but sank about two hours later. Afterwards she was examined by divers; the pintle was found broken. Still later she was blown up by dynamite as a total loss. The skeg, which was found bent, and the broken pintle, have been produced. They were the subject-matter of much evidence. This evidence shows, as the court below found, that the pintle had a flaw or "fatigue break." The Canal Company contended, and there was persuasive evidence to sustain this view, that this "fatigue break," or crystallization break, had been in process for a long while, and that, in the absence of other adequate and satisfactory explanation, the completed fracture of the pintle was the probable cause of the vessel's failing to respond to her helm, and thus of the accident. The District Court reached the conclusion that the break was probably due to the stranding blows or to the dynamiting; that it did not precede the fatal sheer and cause the accident. The final conclusion of the District Court is stated as follows:

"On all the evidence I find and rule that the Canal Company was negligent in attempting to take the Chisholm through the canal at the time in question without the help of tugs and is solely at fault for her loss."

The gist of this finding is that a vessel of that type should not be taken into the canal with a favoring 4-knot tide without the use of tugs. Whether, apart from the failure to use tugs, the court below intended to find negligence, is not entirely clear.

[1–3] In the view we take of this case, an elaborate discussion of the evidence is not necessary. It is plain that the finding below, that the loss was due to the sole fault of the Canal Company, cannot be sustained, unless we find that the owner has sustained the burden of proving four propositions:

(1) That the accident was *not* due to the usual and inevitable dangers of using such a waterway, assumed by all vessels.

(2) That the accident was *not* due to defective steering gear.

(3) That the danger of taking a vessel of that type into that canal was, before the accident, sufficiently obvious, so that men of ordinary prudence, with the knowledge that the canal officials then had concerning the currents in the canal and the steering qualities of vessels of this type, would not have permitted the attempt. It is not enough in the light of hindsight, to find that the canal officials and other prudent people would now conclude that vessels like the Chisholm should not make the attempt.

(4) That the use of a tug would have so obviously lessened the danger of passage as to make it negligence not to use a tug. It is not enough to conclude, on conflicting expert evidence, that a tug would have been a safeguard. The finding must be of such a consensus of opinion among competent and prudent men as to the use of a tug under such conditions as to make it negligence not to use a tug.

Manifestly a chain of evidence is no stronger than its weakest link.

[4] As to the use of a tug—on this point there is a sharp conflict of opinion among honest and competent witnesses. Several pilots testified that, in their view, a tug would have increased, and not decreased, the danger of taking a vessel like the Chisholm through on a favoring flood tide. They contend that a tug immediately ahead of the steamer would create a suction, and make the steamer sheer more and oftener; that, if on a long hawser, she would be of no possible benefit in case of a sheer; that, if alongside, the wash from the tug would increase the likelihood of sheering, besides making extra width to be steered through this narrow channel.

The court below, on this conflicting evidence, concluded that a tug would have been of material assistance in preventing such an accident as occurred. How such assisting tug should in that court's view have been used is not quite clear.

[5, 6] Undoubtedly there is evidence tending to support this conclusion. But it does not, we think, follow that it was negligence for the Canal Company or Capt. Pierce not to reach the conclusion that the court, on doubtful and conflicting evidence, reached. Negligence is failure to conform to the standard of the reasonably prudent man. Broadly speaking, it is departure from the normal, or what should be the normal. But it is not necessarily negligence to fail to reach on a doubtful question the same result that a court reaches after carefully weighing the conflicting opinions of equally honest and competent witnesses.

"Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done." Railroad Co. v. Jones, 95 U. S. 439, 441, 24 L. Ed. 506.

[7] Obviously, when prudent and careful men, equally competent to judge of a difficult and doubtful situation, hold diametrically opposite views as to which of two courses is safer, it cannot be negligence to adopt either course. In such cases, there is no normal from which to depart. We think, therefore, that the court below erred in finding negligence on the part of the Canal Company in not causing a

tug to be used to assist the Chisholm through the canal. We find that the fair preponderance of the evidence on that question is in favor of the Canal Company.

This conclusion on this part of the case makes it unnecessary for us to determine whether the responsibility for not using a tug was solely that of the pilot, or was as matter of law, or as matter of fact, or both, assumed or shared by the captain. But we do not overlook the authorities which indicate that, under conditions not radically different from those presented by this record, the responsibility as to the use of a tug rests upon or is shared by the captain, and does not rest solely upon the pilot. A regulation of the Canal Company was to the effect that the pilot should explain to the captain that tugs were available at no extra expense, so that the captain might, if he chose, ask for a tug. As above noted, when the Chisholm was coming up from Wing's Neck, Capt. Pierce and Pilot Rochester talked concerning the use of a tug, and agreed, at any rate tacitly, that such use was not necessary or desirable. Plainly, Capt. Pierce knew more about the steering qualities of his ship than the pilot could know. Although less familiar with the canal and its currents than the pilot, he had been through it twice. It might well be contended that the captain was in as good a position as the pilot to judge of the behavior of his ship in a favoring tidal current in a narrow waterway, and as to whether a tug would help or hinder in its passage.

In Marsden's Collisions at Sea (7th Ed.) 208, it is said:

"The responsibility for the employment of a tug in ordinary cases rests with the master, whether the ship is in charge of a pilot or not."

Compare The Julia, Lush. 224, 226; Boston, Cape Cod & N. Y. Canal Co. v. White Oak Transportation Co. (C. C. A.) 265 Fed. 538, 544; The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943.

We refer to this question concerning the responsibility of the captain and of the pilot as to the use of a tug simply in order to make it clear that we limit our present decision to finding as a fact that, under the circumstances of this case, the Canal Company is not chargeable with negligence in not causing a tug to accompany the Chisholm on this attempted passage through the canal.

[8] Eliminating the tug factor, the finding below is left to rest entirely on the proposition that it was negligence to allow a vessel of that type to go through the canal with a favoring full moon flood tide. As already indicated, navigators were practically unanimous that a favoring tide is safer than a head tide. If it was negligence to take a vessel through on a favoring tide, a fortiori it would have been negligence with a head tide. This leads to the conclusion that the canal was available for such vessels as the Chisholm only at the slack of the tide. This falls little short of holding that the Canal Company might not, without negligence, operate its canal in its then condition, except in comparatively brief intervals of slack tides. Possibly with head tides the opinions as to the use of tugs would have been different. Certainly no such far-reaching conclusion ought to be reached, except on evi-

dence which is far more clear and convincing than we find in this record.

The fact that the New York boats and other vessels much larger than the Chisholm had been using the canal with apparent satisfaction and safety, that the Chisholm and her sister ship, the Devereaux, had been through several times without the slightest difficulty, were facts upon which the canal officials had a right to rely as a basis for their judgment as to conditions under which the canal was safe for operation. Careful examination of the evidence as to the experience that the canal officials had had up to the time of this accident of the effect of the currents upon the safety of vessels passing through the canal at all states of tides—and without waiting for any particular condition of the tide—forces our minds to the conclusion that it was not negligence for the canal officials to admit the Chisholm at the time in question.

Compare Cleveland v. N. J. S. Co., 125 N. Y. 299, 26 N. E. 327; Hubbell v. Yonkers, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522; Beltz v. Yonkers, 148 N. Y. 67, 42 N. E. 401; Marx v. Ontario Beach Co., 211 N. Y. 33, 105 N. E. 97.

[9] We repeat that the burden is on the owner to establish that its loss was caused by the Canal Company's negligence. The natural reluctance of the mind to admit that the problem of the real cause of the accident has not been satisfactorily solved must not drive us to accept an unsound solution. Negligence must be proved by a fair preponderance of the evidence. It must not be merely guessed, because of the absence of other fully satisfactory explanation of the accident. This has been ruled in numberless personal injury cases. It is a doctrine as sound and as applicable in cases of damage to property as to persons.

The conclusion of the learned District Judge that a man of ordinary prudence would not have permitted the Chisholm to go through the canal with a full moon flood tide seems to rest in large part upon the testimony of Superintendent Geer. Geer testified in substance that, when he received by telephone word that a freighter was at Wing's Neck, he supposed it was the Mohawk, a much smaller vessel than the Chisholm, and that, if he had known that it was the Chisholm, he would not have allowed her in the canal at that state of the tide. But this evidence of Geer was much discredited. At the time of the trial he was no longer in the Canal Company's employ. It clearly appeared on his own cross-examination that immediately after the accident he stated, and also reported to his employers, that, in his opinion, the accident was caused by the breaking of the pintle; that he never, until just before the time of the trial, had stated to any one his theory that the Chisholm ought not to have been allowed in the canal at that state of the tide. The District Judge commented upon the criticism of Geer's testimony, but stated that he impressed him "as being a truthful witness."

We recognize fully the importance and validity of the rule that great weight is to be attached to the finding of the trial judge on all questions involving the credibility of witnesses. But, giving full effect to this rule, we remain, on all the evidence, unconvinced that reasonable and prudent men would, in the light of the experience had with

the navigation of the canal prior to this accident, have regarded it as negligence to undertake the passage of the Chisholm at that time. Assuming that Geer's testimony as to his own opinion concerning the hazard was truthful testimony, we regard that opinion as entirely outweighed by equally competent opinions from other witnesses whose testimony is entirely unimpeached.

While we are not prepared to hold that the court below was in error in finding that the Canal Company had not sustained the burden of showing that the accident *was* caused by the break in the pintle, and that the shipowner knew, or ought to have known, of its defective condition, we are unable to reach any confident conclusion that such was *not* the cause of the accident. The truth is that this record affords no basis for any dogmatic or confident finding as to the real cause of this accident. But it is impossible to free the mind from suspicion that the unprecedented and otherwise almost inexplicable failure of the Chisholm at this particular time to obey her helm may have been due to trouble then developed in her steering gear. There is no evidence of any cross-current or eddy to account for the sheer. There is no satisfactory explanation of why the vessel behaved in this unaccountable fashion, unless there was trouble—at this moment or just before developed—in her steering gear. It is true that there is evidence that vessels like the Chisholm did not, as the District Court found, handle "as sharply, nor as well, as those having finer lines, and need greater depth under the keel in order to steer well." But it is also true that both the Chisholm and her sister ship had made several trips through that canal and had been found to steer well, and that no witness offers any convincing and satisfactory explanation of why, on this occasion, this vessel absolutely refused to obey her helm.

As noted above, to sustain a finding against the Canal Company, the owner must support the burden of showing that defective steering gear, whether known or unknown, was *not* the proximate cause of the accident. We think that burden has not been sustained.

The conclusions we have reached on these points made it unnecessary to discuss whether the accident might not be held due to the usual and unavoidable dangers assumed by all vessels in using such a waterway.

To conclude, we think neither libelant has sustained the burden of proving its case against its libelee. The result is that both libels should be dismissed, without costs, both in this court and in the court below.

In each case, the decree of the District Court is vacated, and the case is remanded to that court, with directions to enter a decree dismissing the libel without costs; neither party recovers costs of appeal.