### THE CRICKET.

### PETERSON v. CRICKET SHIPPING CO.
#### No. 7212.

Circuit Court of Appeals, Ninth Circuit.
May 31, 1934.

S. T. Hogevoll, of San Francisco, Cal., for appellant.

John H. Black and James M. Wallace, both of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

On January 26, 1932, the steamship Cricket was crossing the bar at Gray's Harbor, Washington, bound for the city of Aberdeen in that state. A huge wave swept over the stern of the ship, breaking forward. It struck with such force as to sweep over, not only the poop deck, but the boat deck above and the wash reached even to the bridge. The railing on the boat deck, made of one-inch galvanized iron pipe, was carried away, as were several heavy vegetable crates on the boat deck. An anchor weighing over four hundred pounds was torn loose from its lashings on the poop deck and moved several feet. A ladder made of the same material as the railing above described extended from the poop deck to the boat deck on the starboard side of the vessel. This ladder was constructed of pieces of one-inch galvanized iron pipe and tee fittings. It was approximately eight feet long and there were six or eight steps or cross pieces. It was affixed top and bottom by flanges, into which the vertical pipes were screwed. Each of the two lower flanges was bolted to the poop deck by means of four bolts, while the two upper flanges were bolted to the deck beams with two five-eighths inch bolts each.

Appellant and another seaman were on the first or poop deck when they became aware of their danger. Both ran for the ladder, the other seaman getting there first and scrambling to safety. As appellant mounted this ladder the wave struck with such force that the ladder was sheared from all four of its fastenings. Appellant was washed against the railing of the lower deck. Peculiarly enough, the bolts affixing the ladder to the deck, at either end, were not even loosened; the vertical pieces of pipe were sheared off even with the flanges.

Peterson filed a libel against the steamship Cricket, alleging the ladder to be defective and that by reason thereof he sustained a fractured hip in his fall to the deck and double pneumonia by reason of immersion; further, that he is unable to follow his usual occupation as seaman, because of such injury. Damages were asked in the sum of $5,000, together with maintenance. The Cricket Shipping Company claimed and answered, denying duty, negligence, and injury. It alleged contributory negligence and assumption of risk, as well as seaworthiness of the vessel. Further, it pleaded an unqualified release and discharge in writing, signed by libelant.

The District Court found the facts to be substantially as above set forth and also found that the ladder was properly constructed of iron pipe and securely affixed at both the upper and lower ends and that the vessel was in all respects seaworthy and adequate for intended use prior to the accident. Further, that appellant's injuries were not caused by unseaworthiness or defect in the vessel or equipment. The court also found that libelant had received the sum of $100 from libelee and executed a release therefor and that he had subsequently resumed work and followed his calling.

The court concluded that the libelant was not entitled to damages or to any award for wages or maintenance and decree was entered dismissing the libel. The appeal is taken from this decree.

The general maritime law in cases of injuries suffered by seamen is well stated by Mr. Justice Brown in The Osceola, 189 U. S. 158, 175, 23 S. Ct. 483, 487, 47 L. Ed. 760, as follows:

"1. That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued.

"2. That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep

in order the proper appliances appurtenant to the ship. Scarff v. Metcalf, 107 N. Y. 211, 13 N. E. 796 [1 Am. St. Rep. 807].

"3. That all the members of the crew, except, perhaps, the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of his maintenance and cure.

"4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

The above matter is quoted in Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 380, 38 S. Ct. 501, 62 L. Ed. 1171, and cited in Pacific S. S. Co. v. Peterson, 278 U. S. 130, 136, 49 S. Ct. 75, 73 L. Ed. 220. And the latter case holds that the seaman is entitled to but one indemnity by way of compensatory damages.

 While it is the duty of the owner to use due diligence to see that the ship and its appliances are seaworthy, he is not necessarily an insurer of safety (Burton v. Greig [D. C.] 265 F. 418, 420, affirmed [C. C. A.] 271 F. 271, 272), nor is the owner bound to furnish the best, safest, and most convenient structures (The Santa Clara, 206 F. 179, 180 [D. C. N. Y.]).

The life of a seaman is hard. The nature of his calling subjects him to many dangers. One of these is the hazards of a heavy sea. The sailor knows this and assumes the risks incidental to his calling. In Maloney, etc., v. U. S., 7 F. Supp. 15, 1928 A. M. C. 288, the deceased was struck by a heavy wave (the first to come on deck), which threw him down a stairway causing injuries from which he died. It was held that the accident was due to natural perils of navigation, which Maloney assumed.

"* * * The rule is well settled that in cases on appeal in admiralty, when the questions of fact are dependent upon conflicting evidence, the decision of the district judge, who had the opportunity of seeing the witnesses and judging their appearance, manner, and credibility, will not be reversed unless it clearly appears that the decision is against the evidence. The Albany [C. C.] 48 F. 565, and authorities there cited." The Alijandro, 56 F. 621, 624 (C. C. A. 9).

The foregoing rule is uniformly followed. The Beaver (C. C. A.) 253 F. 312; The

Mazatlan (C. C. A.) 287 F. 873; Siciliano v. California Sea Products Co. (C. C. A.) 44 F. (2d) 784; Rideout v. Charles Nelson Co. (C. C. A.) 55 F.(2d) 783; The Yale (C. C. A.) 58 F.(2d) 974; The Mabel (C. C. A.) 61 F. (2d) 537. The cases cited are all from this circuit.

However, mindful of the fact that an appeal in an admiralty case is a trial de novo, we have with diligence examined the entire record. Our examination leads to the conclusion that not only is there no manifest error in the findings of the lower court but, on the contrary, the findings are fully supported by the evidence.

Affirmed.