**ROBERTS et al. v. UNITED FISHERIES VESSELS CO.**

No. 3947.

Circuit Court of Appeals, First Circuit.

March 20, 1944.

---

290

A. L. Kaplan, of Boston, Mass., for appellants.

Albert T. Gould and Bingham, Dana & Gould, all of Boston, Mass., for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

PETERS, District Judge.

These actions were brought under Section 33 of the Merchant Marine Act of 1920, 41 Stat. 1007, 46 U.S.C.A. § 688, usually referred to as the Jones Act, to recover damages for alleged negligence of the defendant causing the death of the plaintiffs' intestates. A jury trial was had with verdicts for defendant. The plaintiffs appeal on account of the refusal of the presiding judge to instruct the jury in certain respects as requested. The deaths occurred under the following circumstances:

The plaintiffs' intestates, Velmer Joseph Roberts and Samuel Cotreau, were seamen on the schooner "J. M. Marshall", owned by the defendant, engaged in fishing out of Boston. The Marshall carried a complement of eighteen dory fishermen, together with a captain, engineer and cook. Arriving on the fishing grounds November 28, 1941, with the weather favorable, nine dories, with two men in each, left the vessel to set their trawls, as was the custom. Fishing was good and the men were loading their boats with fish from the trawls when the weather changed. A squall came up which quickly developed into a storm with a wind of from 30 to 40 miles an hour. This, with a change in the tide, caused high seas. The men, however, continued their work preparatory to returning to the vessel, which, as usual, had taken a position to the leeward of the boats to pick them up as they came in. Of the nine dories, eight returned safely to the vessel. The ninth, in which were Roberts and his dory-mate, Cotreau, never returned and could not be found after search. The men were undoubtedly drowned.

When last seen from the Marshall during the storm, the Roberts dory was about 150 feet from the vessel. The men in the dory were hauling in their trawls and were then quite heavily loaded, losing some fish overboard, according to the witness.

When the dory-men left the vessel they were under orders from the captain to set two and a half tubs of trawl per dory and, according to the understanding in the fishing business, they were considered to be under orders to stay out until they had finished making their sets, unless they were called in by the captain by a signal consisting of a flag hoisted in the rigging, which, when flown, means that all dory-men are to cut their trawls and come aboard immediately.

The fact that the men were not called back by the captain when the storm came up or during its continuance is the negligence claimed in this action against the employer, owner of the vessel.

The plaintiffs, appellants, base their appeals upon two propositions; one relating to the standard of care required to be exercised by the master of the vessel in his conduct toward the crew, and the second relating to the application of the rule as to assumption of risk. In both matters they allege error in the charge to the jury.

The first point is involved in requested instructions (8) and (10) which are as follows:

"(8) If the jury find that the master of the defendant's vessel, while the crew was engaged in fishing from dories on the high seas and including the plaintiff's intestate, speculated on the length and severity of the stormy condition of the sea and wind, which were then in existence or could have been reasonably foreseen, and failed to order his men to return to a place of safety on the vessel, this would be evidence of negligence.

"(10) In applying the test of acts and conduct of the master of a vessel, to determine whether the master was negligent, the standard of care to be exercised in a case under the 'Jones Act', is a higher degree of care than that required of shore employees and under the common law."

The court below rejected the propositions involving the standard of care required, and charged the jury that the applicable standard of care was that of an ordinarily careful and prudent ship's master under the circumstances then present, charging in part as follows:

(1) "You can decide just what that captain, acting in a careful and prudent manner, would have done or should have done under the circumstances, considering the type of the work in which they were engaged and its hazards. If he acted just as any other reasonably prudent and careful captain would have done, then, of course, the defendant is not liable."

(2) "If you find that the captain of that ship during a storm in which an ordinary careful and prudent and reasonable captain would have called his men back, failed to do so for any reason whatsoever, then that would be evidence of negligence. That would be evidence of negligence that would bind this defendant.

"If, on the other hand, you find that the storm was of a type where the captain or any other person, acting in a reasonably careful and prudent manner considering that they were out there on the high seas to catch fish and make money would have done just exactly as he did, then that would not be evidence of negligence and to determine this point you have got to sift the evidence and ascertain just what the truth of the situation was."

The appellants cannot complain of these instructions, nor of other parts of the charge of the same tenor. Especially is this true of instruction number two, to the effect that if the captain found himself in a storm where a prudent master would summon the men back to the ship,—failing to do so "for any reason whatsoever, would be evidence of negligence". The appellants, however, attack generally the standard given by the jury by which to find negligence. It was that of reasonable care under the circumstances; the care that would be used by a reasonably careful and prudent master of a fishing vessel in the business then in hand.

The nature of the business and the particular dangers involved determine the amount of care required in any particular case, whether on land or on sea. The test or standard to be adopted in determining whether the care used is proper and commensurate with the danger is the supposed conduct under the circumstances of a reasonable and prudent man. Failure to use the care that a reasonable and prudent man would use under like circumstances is the usual concept of negligence. That is the recognized standard of care required under the maritime law, under the Jones Act and under the Railroad Employees' Liability Act, "the standards of duty" of which were "carried over and adopted" by the Jones Act. Language used by Mr. Justice Cardozo in his opinion in Cortes v. Baltimore Insular Line, 287 U.S. 367, 377, 53 S.Ct. 173, 176, 77 L.Ed. 368. In the same case it was also stated:

"The act for the protection of railroad employees does not define negligence. It leaves that definition to be filled in by the general rules of law applicable to the conditions in which a casualty occurs."

In the recent case of Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, at page 67, 63 S.Ct. 444, at page 451, 87 L.Ed. 610, 143 A.L.R. 967, the court has defined negligence under the Railroad Act, saying,

"In this situation the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done."

In Matson Navigation Co. v. Hansen, 9 Cir., 132 F.2d 487, 488, an action under the Jones Act, the court said:

"The test is whether the requirement of a sailor is one which a reasonably prudent superior would order under the circumstances."

In the case of The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 641, 48 L.Ed. 955, the standard of care required of the master of a vessel for the protection of his crew by the maritime law was given by the court, which said:

"* * * All that can be demanded of the master is the exercise of reasonable judgment. * * * To judge the propriety of the master's conduct in a particular case we are bound, as far as possible to put ourselves in his place * * *."

In Boston, C. C. & N. Y. Canal Co. v. Seaboard Transportation Co., 270 F. 525, an admiralty case in this circuit, the court defined negligence as the failure to conform to the standard of the reasonably prudent man. Whicher v. Phinney, 1 Cir., 124 F.2d 929, 933.

The only negligence claimed is that involved in failure to give an order to return to the ship.

It should not be overlooked that this is not a case where a seaman is acting under

orders which he dares not disobey on account of possible discipline such as would prevail on a large ship at sea. The fishing industry off the New England coast is a rather democratic business in which personality and individual judgment are not suppressed. The fishermen are engaged in a common enterprise in which the profit is shared by all hands. The loss of a trawl is the individual loss of the seaman. Rank is not so important. Sometimes, as in this case, a former captain acts as one of the fishermen. The men are usually old hands at the business. One of this crew, a fisherman who had been in the business sixty years, testified that the men were not prevented from using their own judgment in coming back to the vessel. Another witness, eighty years of age, who began going to sea at fourteen and was captain of fishing vessels at twenty-six, testified to a knowledge of incidents where the dory-men came aboard against orders of the captain. The engineer testified in this case that at a time when the Roberts dory was near the schooner the captain spoke the dory and told the men to cut their trawl and come in, and that the men refused. The captain, however, did not confirm this incident. He said, according to the narrative of his testimony,

"There is a custom in the dory-fishing industry for the captain to put a flag in the rigging of the schooner, to call the men back to the vessel, if he wants them to come back before completing their work. No flag was hoisted in the rigging that morning or at any time that day. The men came back to the vessel when their work was done. 'It was not bad, you know, to put a flag in the rigging. I did not think it was that bad to call them in until the dories were coming in with their trawls.' "

Nothing was said about any breach of discipline in coming in if they thought it necessary. The impression is gained from the evidence that the dory fishermen stayed out fishing because they wanted a full catch of fish and to save their trawls, and not because they were afraid to return.

■■ With that background the standard given the jury by which to appraise the action of the captain is seen to be both correct and appropriate to the situation. The jury found under the charge of the judge that the defendant's agent acted as a reasonable and prudent skipper of a fishing vessel should under the circumstances; which fulfilled the obligation resting upon him and exonerated the owner of the vessel.

Counsel for plaintiff requested the court to give the following instruction as to assumption of risk:

"If the jury finds that there were obvious dangers which the plaintiff's intestate could have observed and appreciated, yet continued with his work, he cannot be charged with having assumed the risk of such dangers while carrying out the orders of the master of the vessel."

The instruction was not given, the court charging the jury on this point in part as follows:

"* * * and the law says he assumes the obvious and well known risks of the business in which he is engaged."

"He assumes certain risks but those are the obvious and well known risks that are attendant upon that type of job."

"Then, when a man assumes the risks, obvious and well known risks attendant on the type of occupation he goes into he, of course, does not assume that anyone is going to be negligent or anyone is going to disregard the duties that are owed to him, but he assumes the other way that they are going to give him the reasonable protection to which he is entitled."

■ It is clear that language in the requested instruction which refers to charging the plaintiff's intestate with having assumed the obvious risks of the work, is used with reference to liability, and is another way of saying,—or asking the court to say,—that, if the seaman suffered injury, as a result of exposure to obvious dangers, while carrying out the orders of the master, the loss does not fall upon the seaman but upon his employer.

■ Such an instruction is defective in that it does not distinguish between proper orders and improper or negligent orders. If a seaman is injured in one of the normal hazards of the business, without fault on the part of anyone else, the ship being seaworthy and equipment perfect, he stands or "assumes" the loss himself, subject, of course, to the ancient right of "maintenance and cure". He is held to assume the ordinary risks of his occupation, of which negligence of the owner or master is not one. This is true under the Jones Act as well as under the general maritime law.

The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955; The Arizona v. Anelich, 298

U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075; The Socony-Vacuum Oil Co., Inc., v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; The Cricket, 9 Cir., 71 F.2d 61; Tampa Inter-Ocean S. S. Co. v. Jorgensen, 5 Cir., 93 F.2d 927.

The defense called "assumption of risk" can no longer be made in an action controlled by the applicable provisions of the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.), Section 54 of which provides, "that such employee shall not be held to have assumed the risk of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

But where the injury or death is not the result, in whole or in part of the negligence of the employer, or his agents, the provision has no effect to change the rights or remedies of the parties, and, in the case of a seaman, he takes the same risks of his calling as he did before under admiralty law. By the Jones Act he is given a right of action for the negligence of his employer which he did not have before, but the usual risks of the calling are not shifted on to the employer if the employer is guiltless of any fault.

It should be noted that no question of unseaworthiness of the vessel or defective equipment of the vessel or her dories is involved here. Most of the numerous decisions in the books, including those relied upon by the plaintiffs, are concerned with the use of appliances furnished or under the control of the employer, and are not applicable. The responsibility of the owners for a seaworthy ship and safe equipment is absolute and not a result of the Jones Act. The right of a seaman to "maintenance and cure" has nothing to do with the case. The only question raised in this case, and the one properly submitted to the jury, was whether the captain was negligent in not giving an order, and, if so, whether that was the cause of the accident.

The presence or absence of negligence governs the verdict. If there is no negligence the plaintiff cannot recover. If the defendant is negligent he cannot avoid the effect of it by pleading assumption of risk. Such a defense is absolutely "out of the window" since the statute and since the decision in Tiller v. Atlantic Coast Line Co., 318 U.S. 54, 63 S.Ct. 444, 453, 87 L.Ed. 610, 143 A.L.R. 967. But, as pointed out by Mr. Justice Frankfurter in his concurring opinion in the Tiller case, Congress "has left undisturbed the other meaning of 'assumption of risk', namely, that an employee injured as a consequence of being exposed to a risk which the employer in the exercise of due care could not avoid, is not entitled to recover, since the employer was not negligent."

The importance of the distinction between proper and improper orders, —in other words the distinction between the rights of the parties in the presence of negligence and when negligence is absent,—was lost sight of in framing the requested instruction. The judge cleared this up in his charge, however, and properly explained to the jury that the seaman accepts the obvious and well known risks of the business but does not run the risk of negligence of others; and that he has a right to assume that he will receive the protection to which he is entitled. He directly covered the basic issue in the case by directing the jury to render verdicts for the plaintiffs if the jury found that under the circumstances, and taking into consideration the prevailing weather, a careful and prudent master would have called his men back, and the master in this case failed to do so for any reason whatever.

Proper instructions as to proximate cause and contributory negligence were also given, unobjected to; and the jury could not reasonably have been under any misapprehension as to the law governing the rights of the parties.

The judgments of the District Court are affirmed.