**GELB v. UNITED STATES et al.**

No. 6951.

District Court, S. D. California, Central Division.

Feb. 12, 1948.

834

Katz, Gallagher & Margolis, and Victor E. Kaplan, all of Los Angeles, Cal., for libelant.

Lasher B. Gallagher, of Los Angeles, Cal., for respondents United States and American President Lines.

YANKWICH, District Judge.

The above-entitled amended libel for damages, wages, maintenance and cure, brought under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., the Jones Act, 46 U.S.C.A. § 688, and Public Law 17, 78th Congress, 57 Stat. 45, heretofore tried, argued and submitted, is now decided as follows:

■ (1) As to the first cause of action, grounded on the Jones Act, the libel will be dismissed. A further study of the evidence and the depositions in the case confirms as a conclusion the impression received and expressed at the conclusion of the evidence and the argument, that the libelant has failed to prove that the injury which he suffered was caused by any negligence on the part of the respondent in failing to furnish him a safe place to work or safe appliances. .

The amended libel alleged that the accident which resulted in the injury was caused by the failure of the respondent to equip the merchant vessel John W. Howland with proper hand rails and lines and by their negligence in allowing, on January 22, 1946, the presence of potato peelings on the deck which the libelant had to cross in going from his quarters to work as a second steward.

At the trial, I allowed evidence to be introduced of an alleged additional cause, —negligence in allowing a wet deck, caused by a faulty drain on the deck and which caused what the libelant called "a film of water" to accumulate in the passage.

■ An action of this character is grounded solely on negligence. Whether the negligence consists in failure to supply proper equipment, or in allowing unsafe conditions to exist, the burden is upon the libelant to prove it. See Engel v. Davenport, 1926, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813; De Zon v. American, 9 Cir., 1942, 129 F.2d 404, 407; Roberts v. United Fisheries Vessels Co., 1 Cir., 1944, 141 F.2d 288; and see Commentary on Maritime Workers by James Henry Willock in 46 U.S.C.A. preceding § 688.

I am of the view that the evidence does not support any of these three assertions.

It is to be borne in mind that the libelant was the second steward in charge of the dining room. He was not required to work on the deck. His only presence on the deck was when he crossed it on his way from his quarters to the dining room. So the duty of the respondents towards him must be considered in that light.

There is no evidence that on vessels of this character equipment of the type suggested in the libel—hand rails and lines—is necessary, required, customary, or called for by careful construction or operation. On the contrary, the evidence is clear that the vessel was a converted Liberty ship like many others of similar construction, used for the same purpose, and that no accident occurred to any members of the crew or to any one on this particular voyage, even in the heavy sea, by reason of the absence of any hand rails or lines. In meeting the burden of proving negligence, the libelant must prove not only that the equipment, of the absence of which he complains, was required as a part of the respondents' duty of care toward libelant and others similarly situated, but that the accident which resulted in his injury was caused proximately by its absence. However, the evidence shows beyond dispute that the accident was not caused either by a slippery deck or the presence of potato peelings on it. Neither does it show that the presence of hand rails, lines or door knobs would have prevented it. According to the libelant's own version, he never slipped or fell until after he sustained the injury. A heavy sea caused him to stagger from starboard to port on the deck and backwards, finally being thrown against the bulkhead. At all times, even up to the last moment, he remained on his feet. He received his injury while trying to steady himself and stretching out his hands. He could not have taken hold of any hand rail, line or door knob had any been there. Nor does the libelant's complaint about the absence of chains around the canvas-covered hatch have any substance. It is the uncontradicted testimony and a fact of which the court takes judicial notice that the chains are put around the hatches only when the hatches are open to prevent longshoremen or others loading or unloading cargo from slipping into the hold. The movement already described caused by the heavy rolling of the sea could not have been prevented by the presence of any chains on the sides of the hatch. Absent any breach of duty on the part of the respondents, either through defective equipment or failure to furnish a safe place to work, the seaman cannot recover if he is injured as a result of situations which may normally arise. A heavy sea is certainly one of them. This principle applies, although the defense, of assumption of risks is not available. As said in Roberts v. United Fisheries Vessels Co., 1 Cir., 1944, 141 F.2d 288, 292;

"If a seaman is injured in one of the normal hazards of the business, without fault on the part of anyone else, the ship being seaworthy and equipment perfect, he stands or 'assumes' the loss himself, subject, of course, to the ancient right of 'maintenance and cure'. He is held to assume the ordinary risks of his occupation, of which negligence of the owner or master is not one. This is true under the Jones Act as well as under the general maritime law. The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955; The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075; The Socony-Vacuum Oil Company, Inc., v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; The Cricket, 9 Cir., 71 F.2d 61; Tampa Inter ocean S. S. Co. v. Jorgensen, 5 Cir., 93 F.2d 927.

"The defense called 'assumption of risk' can no longer be made in an action controlled by the applicable provisions of the Federal Employers' Liability Act (45 U.S. C.A. § 51 et seq.), Section 54 of which provides, 'that such employee shall not be held to have assumed the risk of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.'

"But where the injury or death is not the result in whole or in part of the negligence of the employer, or his agents, the provision has no effect to change the rights or remedies of the parties, and, in the case of a seaman, he takes the same risks of his calling as he did before under admiralty law. By the Jones Act he is given a right of action for the negligence of his employer which he did not have before, but the usual risks of the calling

**836**

are not shifted on to the employer if the employer is guiltless of any fault."

Hence the conclusion that no recovery can be had under the First Cause of Action.

■ (2) As to the Second and Third Causes of Action, seeking maintenance and cure, I am of the view that the libelant is not entitled to wages and sustenance up to the time when he began to work again,— September 2, 1946. This for the reason that, under the shipping articles, his employment as a member of the crew of the S. S. John W. Howland was for a voyage from the port of New York to a point in the Atlantic Ocean and thence elsewhere as might be ordered or directed by the United States Government, or any of its departments or agencies, and back to a final port of discharge in the United States for a term of time not exceeding nine calendar months. The voyage was completed and the articles were terminated at the port of New York, a final port of discharge, on January 28, 1946. The libelant has received wages and maintenance in full to that date. His demand for the difference between the wages he received between that date and this day by working as a sign painter,— and the wages he might have received as a steward, must be rejected. This for the obvious reason that the libelant, according to his own admission, never sought to go back to sea as a steward or in any other capacity. His medical expert, Dr. I. P. Lopizich, testified that, despite the injury to the left wrist, he could have engaged in the occupation of a steward, because it involved no lifting or use of the wrists. His own testimony is to the same effect. In fact, he states quite frankly that the job as second steward was supervisory in nature. Why, instead of returning to that easier occupation, he chose to return to the more arduous one of sign painter is not explained. Whatever be the cause, the respondents cannot be penalized because the libelant chooses to go back to another occupation which required physical efforts which he could not perform fully because of the injury received. See Luksich v. Misetich, 9 Cir., 1944, 140 F.2d 812, 814, 815.

No costs to either side. Proctors for respondent will prepare findings under Local Rule 7. They will also compute under Rule 7(h) the exact amount to be allowed up to the 2d day of September, 1946, after deducting therefrom the sustenance actually received, including the sum of $105 shown by Exhibit B to have been received while working as a painter.