[Civ. No. 4294. Fourth Dist. Oct. 15, 1952.]

JAIME ALVAREZ, Appellant, v. VAN CAMP SEA FOOD COMPANY, INC., et al., Respondents.

Harold P. Lasher and Charles E. Burch for Appellant.

-J. A. Donnelley and Richard P. MacNulty for Respondents.

BARNARD, P. J.—This is an action for damages brought under the Merchant Seaman's Act, commonly known as the Jones Act (Title 46 U.S.C.A., § 688).

The plaintiff was one of the crew on a tuna boat owned by the defendants. The boat left San Diego in October, 1947, on a fishing trip. One of its owners, Jose Alves, was in charge of the vessel as master. He had hired the crew, one of whom was his son Eduenno Alves, who was an apprentice seaman making his first trip on a tuna boat. The plaintiff was injured on January 4, 1948, while the boat was in the vicinity of the Galapagos Islands in the Pacific Ocean, and while certain members of the crew were engaged in fishing.

This tuna boat was nearly new and modern. It had a live bait box consisting of three tanks near the center of its deck. A wooden canopy held up by stanchions covered the rear two tanks but not the front tank. The evidence is undisputed that the canopy on such boats is never extended over the front tank because it would interfere with other operations which are necessary. Briefly stated, the method of fishing was as follows. There were a number of racks along the side of the boat outside the bulwark, where the fishermen stand several feet apart. The fishermen were using short poles some 8 or 9 feet long with about a 5-foot line to which was attached a "squid," which is a heavy barbless hook. When a fish was hooked the fisherman would try to bring it around nearly in front of him and then throw the fish over his right shoulder so it would land on the deck. Frequently the hook would tear loose while the fish was fighting. When this happened the fisherman would fall back against the bulwark and the hook on the end of the line would fly back over his head. Usually, the hook would hit the top of the canopy or the side of the bait box. On the occasion in question, Eduenno Alves was fishing on a rack about the middle of the side of the boat, and he had hooked a 25 or 30-pound fish. As he was trying to work the fish around in front of him, with the fish fighting, the fish broke loose. He fell back and the hook and line went over his head, the hook striking the plaintiff and causing the loss of an eye. The line and hook wound itself around a stanchion at the front end of the canopy.

Before the accident the plaintiff was on duty on the bait

tank, helping the chummers, where he had been passing bait from the forward tank to the middle tank. He testified that he was under the canopy and beside the middle tank at the time he was injured. There was other evidence that when he was first seen by other people after the accident he was standing outside of the protected canopy near the forward tank. There was no evidence, and it is not contended, that the portion of the boat under the canopy was other than a safe place to work. There is evidence that these portions of the boat were similar to those used on all tuna boats.

The complaint was based upon the theory that the plaintiff's injuries were caused by the negligence of the defendants. The plaintiff alleged in his first cause of action that he was standing on top of the bait tank acting as a chummer while other members of the crew were engaged in fishing, and that the master of the vessel did "negligently and carelessly conduct and carry on the fishing going on at the same time and place; that by reason thereof plaintiff was caused to be struck across the right eye and nose by one of the fishing lines." In a second cause of action it was alleged that Eduenno Alves and one other, acting within the scope of their duties, "did so negligently and carelessly handle fishing pole and line that the fishing pole and line snapped back with such force as to cause the end of said line to strike and come in contact with the plaintiff across his right eye and nose, thereby causing the plaintiff the injuries and damages complained of." Nowhere in the pleadings was it alleged that the defendants had failed to provide the plaintiff with a safe place to work, or that the vessel was unseaworthy or any of its equipment dangerous or defective. No evidence was introduced on any issue of unseaworthiness or defective equipment, but an attempt was made to show that the defendants had not provided the plaintiff with a safe place to work and this issue was submitted to the jury.

The jury found in favor of the defendants and the plaintiff has appealed from the judgment. While it is not claimed that the evidence is insufficient to support the judgment, it is contended that there was ample evidence of negligence on the part of the defendants. It is argued in this connection that the evidence shows that Eduenno Alves was an inexperienced fisherman since this was his first trip on such a boat; that he had not been given sufficient instructions; that since the line wound itself around the front stanchion it must have been going back in a sort of sweeping way; and that the area where

plaintiff was working was unsafe, since the front tank was unprotected by any canopy. The evidence was conflicting as to these issues, and there was ample evidence that Eduenno Alves had done considerable fishing; that he had been adequately instructed; that he was acting in the customary manner at the time in question; that he had done what any other fisherman would have done; and that it was neither customary nor reasonably possible to furnish any other protection for men in the position where the plaintiff was working.

The cause was submitted to the jury on the question of negligence on the part of the defendants, whether in providing a safe place to work or otherwise. The jury was given the usual instructions on negligence and proximate cause. The jury was then told, among other things, that under the Jones Act a seaman who suffers a personal injury in the course of his employment is given a cause of action if the proximate cause of his injury is the negligence of the owners of the vessel, the master of the vessel, or any fellow seaman on the vessel; that Jose Alves had operated the boat as the agent of the owners and his conduct "shall be deemed by you to have been the conduct of these owners"; that Eduenno Alves was likewise acting within the scope of his authority and "hence his conduct shall be deemed by you to have been the conduct of these owners"; that Eduenno Alves was required to use reasonable care, a care commensurate with the danger existing at the time, the test being whether his conduct under the circumstances had been that of a reasonable and prudent man; that any contributory negligence on the part of the plaintiff would not bar a recovery, but should be taken into account through a reduction of any damages allowed to an extent proportionate to the extent of plaintiff's fault; that the employers of the plaintiff were bound to exercise reasonable care to provide a reasonably safe place to work, and to exercise ordinary care to guard against injuries to their employees; that while certain hazards are inherent in the nature of a fisherman's duties on the high seas, the amount of caution required of the defendants, in the exercise of ordinary care, increases in accordance with the danger that is known or that reasonably should be apprehended in the existing situation; that "If a seaman is injured in the normal hazards of his business without fault on the part of anyone else, the ship being seaworthy and the equipment perfect, he assumes the loss himself and cannot recover for his injuries"; and that the plaintiff "was not obligated

or required to bear the risk of injury through the fault or negligence of a fellow servant,'' or other employee.

The appellant contends that the court erred in failing to properly instruct the jury in accordance with the provisions of the Jones Act, under which this action was brought. It is first contended that while the court told the jury that the defendants were bound to exercise reasonable care to provide a reasonably safe place in which to work, it erred in refusing to give an instruction that ''Assumption of risk is not a defense to a suit brought by a seaman under the . . . Jones Act, where the employers negligently fail to provide safe appliances or a safe place in which to work.'' It is argued that by refusing this instruction and by telling the jury that ''if a seaman is injured in the normal hazard of his business without fault on the part of anyone else, the ship being seaworthy and the equipment perfect, he assumes the loss himself and cannot recover for his injuries'' the court, in effect, told the jury that as a matter of law the plaintiff assumed the risk of such injury whether or not the appliances or the place where he was working was safe; that the jury was thus misled into assuming that if the plaintiff was injured while he was outside of the canopy he assumed the risk of being injured; and that if the court had given the refused instruction on assumption of risk the jury would have known that the plaintiff had not assumed such a risk.

The doctrine of assumption of risk had not been pleaded and in that form was not involved in the case. It was still true, however, that the defendants were not liable if the plaintiff was injured as a result of a normal hazard of his business and without fault on the part of anyone else, and if the ship was seaworthy and the equipment perfect. These issues were left to the jury as questions of fact, and the jury was told that the defendants were liable for any negligence on their part; that they were bound to use reasonable care in providing a safe place to work; that the amount of care required of them increased in accordance with the danger to be foreseen; that the defendants were bound by the acts of their agents; and that the plaintiff was not required to bear the risk of injury through the negligence of other employees. It was unnecessary to add a further instruction to the effect that assumption of risk was no defense if the defendants had negligently failed to provide a safe place to work. The instructions as given did not have the effect of telling the jury that the plaintiff assumed the risk, as a matter of law, regardless

of whether or not the appliances or the working conditions were safe. In *Roberts* v. *United Fisheries Vessels Co.*, 141 F.2d 288, in commenting on the fact that the defense of assumption of risk can no longer be made in such an action, the court said:

"But where the injury or death is not the result, in whole or in part of the negligence of the employer, or his agents, the provision has no effect to change the rights or remedies of the parties, and, in the case of a seaman, he takes the same risks of his calling as he did before under admiralty law. By the Jones Act he is given a right of action for the negligence of his employer which he did not have before, but the usual risks of the calling are not shifted on to the employer if the employer is guiltless of any fault. . . . The presence or absence of negligence governs the verdict. If there is no negligence the plaintiff cannot recover."

■ It is next contended that in giving the instruction that under the Jones Act a seaman is given a cause of action for injuries proximately caused by the negligence of the owners, the master, or any fellow seaman on the vessel, the court failed to add "or by reason of any defect, due to the owners' negligence, in the ship's equipment." Neither in the pleadings nor in the evidence was it urged that any of the boat's equipment was defective or that the plaintiff was injured by reason of any such defect. It was, at least inferentially, contended that some further precautions could have been taken in connection with the question as to whether a reasonably safe place to work had been provided. The duty of the owners to provide a safe place to work was covered in the instructions and the issue was submitted to the jury as a question of fact. The matter of any negligence on the part of the defendant was submitted to the jury, regardless of whether it arose from negligence in furnishing a safe place to work or from some other act or omission.

■ It is next contended that the court erred in refusing an offered instruction which would have told the jury that "a higher degree of care is required of the employers of seamen than is required of employers of seamen who work ashore." This was sufficiently covered by the instruction calling attention to the hazards which are inherent in the nature of a fisherman's duties on the high seas, which further told the jury that the amount of caution required from the defendants would increase in proportion to the danger which was

known to be involved, or which was reasonably to be apprehended.

It is further contended that the court presumed that this ship was seaworthy and the equipment perfect by including in its instruction with reference to an injury resulting from a normal hazard, without fault on the part of anyone else, the words ''the ship being seaworthy and the equipment perfect,'' and thus took this issue of fact away from the jury. This contention is without merit. The factual questions raised by the evidence were all left to the jury. The court left it to the jury to say whether the defendants were negligent in any respect, including the matter of providing a safe place to work, and the instructions adequately covered the entire matter of negligence including those called for under the provisions of the Jones Act. (*Beadle* v. *Spencer*, 298 U.S. 124 [56 S.Ct. 712, 80 L.Ed. 1082].)

The only other point raised is that the court erred in ruling on one question of evidence. During the cross-examination of an expert witness, with many years' experience in this kind of work, appellant's counsel asked: ''Captain, would it be possible to attach to the end of the canopy what might be a detachable canopy that could be rolled back or rolled over during fishing operation?'' An objection that the question called for conjecture was sustained, the court saying that whether or not it was possible was not the test. Appellant's counsel then asked the witness ''Has that ever been done?'' and the witness replied ''I never heard of it, sir.'' The matter was not pursued further and neither error nor prejudice appears.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied November 10, 1952, and appellant's petition for a hearing by the Supreme Court was denied December 11, 1952. Carter, J., was of the opinion that the petition should be granted.